In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1128

Silverio Flores-Leon,

Petitioner,

v.

Immigration and Naturalization Service,
and John Ashcroft, Attorney General
of the United States,

Respondents.

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A17-132-384

Argued February 28, 2001--Decided November 14, 2001


   Before Harlington Wood, Jr., Kanne, and
Rovner, Circuit Judges.

   Kanne, Circuit Judge.  On August 24,
1994, petitioner, Silverio Flores-Leon,
was convicted of two counts of aggravated
criminal sexual abuse in violation of
Illinois criminal law stemming from his
undisputed act of sexually touching a
female child younger than 13 years of
age. On June 8, 1999, an immigration
judge held that Flores-Leon had been
convicted of a crime of violence and
sexual abuse of a minor and he was,
therefore, deportable. On December 20,
1999, the Board of Immigration Appeals
("BIA") agreed. Flores-Leon now appeals.
We find that Flores-Leon raises no valid
constitutional claims. Therefore, we
dismiss his appeal for lack of subject
matter jurisdiction.

I.  History

   The petitioner, Silverio Flores-Leon, is
a 52-year-old male and a native and
citizen of Mexico. On May 12, 1999, the
Immigration and Natural Service ("INS")
issued Flores-Leon a Notice to Appear
("NTA") charging him with removability
pursuant to the Immigration and
Nationality Act ("INA"), 8 U.S.C. sec.
1227(a)(2)(A)(iii), based on his

conviction for aggravated criminal sexual abuse. The NTA alleged that Flores-Leon was not a citizen or national of the United States, that he was a native and citizen of Mexico, and that he was admitted to the United States at Eagle Pass, Texas on or about March 5, 1966, as a lawful permanent resident. The NTA further alleged that on August 24, 1994, Flores-Leon had been convicted of two counts of aggravated criminal sexual abuse in violation of Ch. 38, Section 12-16-(C)-(1)(I) of the Illinois Revised Statutes 1989 as amended, and sentenced to three years imprisonment. The NTA charged that Flores-Leon, therefore, was subject to removal under the INA because he had been convicted of an "aggravated felony" as defined therein.

An immigration judge conducted a hearing on May 25, 1999. At the start of the hearing, Flores-Leon was not accompanied by counsel and stated that his name was "Silverio Flores-Leon." The immigration judge identified the participants in the hearing and their roles, the purpose of the proceeding, and the factual allegations supporting the charge of removability. The immigration judge gave Flores-Leon a copy of the Certified Statement of Conviction ("Conviction Record"), at which point Flores-Leon informed the immigration judge that he had retained a private attorney to represent him. Thereupon, Flores-Leon's attorney arrived at the hearing and requested a continuance and a bond hearing. The immigration judge granted the continuance.

On June 1, 1999, the immigration judge denied Flores-Leon's request for bond and set the removal hearing for June 8, 1999. The immigration judge began the removal hearing by addressing Flores-Leon's motion to recuse on the grounds that the same judge cannot hear both the bond and the removal hearing. The motion was denied as was Flores-Leon's subsequent motion for a continuance to take an interlocutory appeal from that ruling. The immigration judge next asked Flores-Leon to plead to the factual allegations and charge of the NTA. Flores-Leon's counsel responded that Flores-Leon would neither admit nor deny any of the allegations or charges and asked that "the Service be put to its burden of proof."

The INS began its case-in-chief by calling Flores-Leon as a witness. After again identifying himself as "Silverio Flores-Leon," he testified that he was born in Mexico. Thereafter, Flores-Leon responded, "I don't wish to respond, because it's against the rights of the Constitution of the United States" to the following questions from the INS: Are you a permanent resident of the United States? Were you convicted on August, 24, 1994, of aggravated criminal assault? Were you sentenced to a term of three-years imprisonment? Flores-Leon's counsel explained to the immigration judge that his client's refusal to answer was not based on the Fifth Amendment right against self-incrimination, but instead on the First Amendment's guarantee of "freedom of speech and the right to remain silent" and on "the Fifth Amendment due process right."

The INS then presented Flores-Leon with the Conviction Record and asked him whether it was his name on the record. Flores-Leon responded that he did not "wish to respond because it's against the rights of the United States Constitution." Flores-Leon's counsel then objected to admitting the Conviction Record into evidence on the grounds that it referred to "Silverio Flores" and thus did not relate to the name on the NTA-- "Silverio Flores-Leon." The immigration judge overruled the objection and admitted the Conviction Record into evidence./1

The INS then presented Flores-Leon with his immigration visa and asked him to identify it. Flores-Leon responded that he did "not wish to respond because it's against the rights of the United States Constitution." The immigration judge admitted the visa into evidence over counsel's objection that it was not properly certified and that there was insufficient foundation. The INS then rested.

Flores-Leon offered no evidence. During closing arguments, Flores-Leon's counsel asserted that under the pre-1996 definition of "aggravated felony," Flores-Leon was not an aggravated felon and, therefore, was not deportable. He argued that the 1996 amended definition of "aggravated felony" should not be

applied retroactively to a 1994 conviction.

The immigration judge found that even though Flores-Leon refused to respond to "almost all questions," he did admit to his birth in Mexico. The immigration judge found that that admission and the immigration visa established Mexico as Flores-Leon's country of birth and nationality. Because the evidence showed Flores-Leon to be a Mexican national, the immigration judge found that the INS had established a prima facie case of removability and that the burden shifted to Flores-Leon to contest that finding.

The immigration judge also found that the Conviction Record reflected Flores-Leon's last name and that he made no attempt to rebut that it related to him. The Conviction Record established that Flores-Leon had been convicted of two counts of aggravated criminal sexual abuse of a minor and had received a three-year sentence. Based on the Conviction Record, the immigration judge found that the INS had established that Flores-Leon was an "aggravated felon" as defined by the INA. Because Flores-Leon had failed to rebut the evidence against him, the immigration judge ordered that Flores-Leon's lawful permanent residence status be terminated and that he be removed to Mexico. Flores-Leon timely appealed to the BIA, alleging that the admission of the visa and Conviction Record was improper, that the government had failed to meet its burden, and that the retroactive application of the amended definition of "aggravated felony" was unconstitutional. On December 20, 1999, the BIA rejected the appeal and adopted the immigration judge's conclusions.

On February 20, 2000, Flores-Leon sought review in this court. The INS opposed Flores-Leon's request with a motion to dismiss, alleging that this court lacked subject matter jurisdiction because the INA bars review of a deportation order for aliens convicted of an "aggravated felony," as that term is defined by the INA. On June 20, 2000, we ordered the parties to brief and argue both the jurisdictional issue and the substantive issues in full and we ordered that the motion to dismiss be taken with the case.

II.  Analysis

The INS argues that this court lacks subject matter jurisdiction over Flores-Leon's appeal. The INA provides in relevant part that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered" by the statutory provision making aggravated felons removable. See 8 U.S.C. sec. 1252(a)(2)(C). The INS argues that Flores-Leon's petition should be dismissed because the immigration judge/2 determined that Flores-Leon's aggravated criminal sexual abuse conviction is an "aggravated felony" under the INA, thereby invoking the jurisdictional bar. However, as the government concedes, this court does have jurisdiction to determine whether jurisdiction exists. See Xiong v. INS, 173 F.3d 601, 604 (7th Cir. 1999). Further, we have previously held that an alien may challenge his deportability on constitutional grounds directly in the court of appeals provided that he raises a substantial constitutional claim. See Lara-Ruiz v. INS, 241 F.3d 934, 939 (7th Cir. 2001); LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998). Therefore, we must first determine whether the immigration judge correctly concluded that Flores-Leon was "an alien deportable by reason of having committed an aggravated felony." If we answer that question in the affirmative, we must then consider whether Flores-Leon has nevertheless raised substantial constitutional claims, so that we may assert jurisdiction over those claims. See Lara-Ruiz, 241 F.3d at 939.

Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." See 8 U.S.C. sec. 1227(a)(2)(A)(iii). In 1996, Congress adopted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), as part of a sweeping program of immigration reform. IIRIRA amended the INA to substantially expand the definition of "aggravated felony" to include crimes that had not been included earlier. See IIRIRA sec. 321(a). The INA now defines an "aggravated felony" to include "murder, rape, or sexual abuse of

a minor," whereas previously only murder constituted an "aggravated felony" under the INA. See IIRIRA sec. 321(a)(1). Further, IIRIRA expanded the definition of "aggravated felony" to include "a crime of violence . . . for which the term of imprisonment imposed [is] at least one year." See IIRIRA sec.sec. 321(a)(3), 322(a)(2)(A)./3

Flores-Leon attacks the immigration judge's determination that he was convicted of an "aggravated felony" as that term is now defined by the INA. See 8 U.S.C. sec.sec. 1101(a)(43)(A) and (F). Flores-Leon does not dispute that hisconviction for aggravated sexual abuse where the victim was younger than 13 years constitutes "sexual abuse of a minor" within the definition of "aggravated felony." See 8 U.S.C. sec. 1101(a)(43)(A). Rather, Flores-Leon contends that because his 1994 conviction predates the 1996 amendments expanding the definition of "aggravated felony," the retroactive application of the amended definition would violate the Ex Post Facto Clause. See U.S. Const. art. I, sec. 9, cl. 3. Therefore, according to Flores-Leon, Congress did not intend for the amended definition to apply retroactively. The government argues that Congress provided a clear directive that the amended definition was to be applied regardless of when the conviction occurred. After reviewing the statutes at issue, we find that the immigration judge correctly applied the amended definition of aggravated felony to Flores-Leon's conviction.

Our starting point to determine the intent of Congress is the language of the statute itself. See United States v. Hayward, 6 F.3d 1241, 1245 (7th Cir. 1993). When the intent of a statute is clear, the court and the agency must give effect to the unambiguously expressed will of Congress. See Am. Fed'n of Gov't Employees v. Rumsfeld, 262 F.3d 649, 655-56 (7th Cir. 2001). However, when the statute is silent or ambiguous with respect to a material issue, the court should defer to the agency's interpretation so long as that interpretation is based on a permissible construction of the statute. See id. at 656 (citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 81

L. Ed. 2d 694 (1984)).

In addressing retroactivity, the Supreme Court has stated that "there is a presumption against retroactive legislation [that] is deeply rooted in our jurisprudence. The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." Hughes Aircraft Co. v. United States, 520 U.S. 939, 946, 117 S. Ct. 1871, 138 L. Ed. 2d 135 (1997) (internal quotations and citations omitted). However, this presumption only applies if Congress has not "clearly manifested its intent to the contrary." Id.

To determine the intent of Congress, we begin by looking at the language of Sections 321(a)(1) and (a)(3) of IIRIRA, which significantly expanded the definition of an "aggravated felony." See 8 U.S.C. sec. 1101(a)(43). Section 321 of IIRIRA goes on to amend the INA to read: "Notwithstanding any other provision of law (including any effective date), [the amended definition of aggravated felony] applies regardless of whether the conviction was entered before, on, or after September 30, 1996." See IIRIRA sec. 321(b) (emphasis added). Finally, Section 321(c) of IIRIRA explains the effective date of the entire provisions: "The amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act,regardless of when the conviction occurred." IIRIRA sec. 321(c).

We join the First and the Ninth Circuits in concluding that Congress has clearly manifested an intent to apply the amended definition of "aggravated felony" retroactively. See Sousa v. INS, 226 F.3d 28, 30-33 (1st Cir. 2000); Aragon-Ayon v. INS, 206 F.3d 847, 851-52 (9th Cir. 2000); cf. Moosa v. INS, 171 F.3d 994, 1007 (5th Cir. 1999) (applying amended definition of "conviction" retroactively because congressional intent expressed in IIRIRA is clear). Section 321 of IIRIRA contains a clear and express directive from Congress that the amended definition of "aggravated felony" should be applied to any and all criminal violations committed by an alien after his or her entry into the United States, regardless of whether they were committed before or after the amended definition went into

effect. Section 321(b) leaves Flores-Leon no room to argue otherwise, as it clearly states that the revised definition applies to convictions entered before the enactment date. See Aragon-Ayon, 206 F.3d at 852. Since either the immigration judge's decision or the BIA's affirmance constitute an "action taken" under Section 321(c), see Xiong, 173 F.3d at 607, both acts bring Flores-Leon's conviction within the expanded definition of aggravated felony. Therefore, we agree that Flores-Leon was convicted of an "aggravated felony" under the INA and, therefore this court does not have jurisdiction to review the merits of the immigration judge's decision. See 8 U.S.C. sec. 1101(a)(43)(A)./4

   Moreover, even if we had jurisdiction, the constitutional defects asserted by Flores-Leon are without merit. Flores-Leon claims that applying the 1996 amended definition of "aggravated felony" to his 1994 conviction violates the Ex Post Facto Clause. See generally Weaver v. Graham, 450 U.S. 24, 28-29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981). The Ex Post Facto Clause prohibits the retrospective application of criminal laws that materially disadvantage the defendant. See U.S. Const. art. I, sec. 9, cl. 3. However, the Ex Post Facto Clause only applies to criminal laws. See Collins v. Youngblood, 497 U.S. 37, 41, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). The fatal flaw in Flores-Leon's argument is that removal under the immigration laws is a civil proceeding, not criminal punishment. See Harisiades v. Shaughnessy, 342 U.S. 580, 594, 72 S. Ct. 512, 96 L. Ed. 586 (1952); Chavez-Raya v. INS, 519 F.2d 397, 400 (7th Cir. 1975). Therefore, because IIRIRA did not increase Flores-Leon's punishment but only made available the civil penalty of deportation, see IIRIRA sec. 321, the Ex Post Facto Clause is inapplicable. Moreover, the fact that deportation proceedings are not criminal and do not constitute punishment also disposes of Flores-Leon's contention that his deportation would constitute "cruel and unusual punishment" under the Eighth Amendment. See United States ex rel. Circella v. Sahli, 216 F.2d 33, 40 (7th Cir. 1954).

   Flores-Leon also asserts that he was denied a fair hearing as required by due

process under the Fifth Amendment. Initially, Flores-Leon contends that the immigration judge's failure to recuse himself from Flores-Leon's removal proceeding after conducting the bond hearing violated INS regulations. Flores-Leon relies on 8 C.F.R. sec. 3.19(d), which requires that a bond hearing be "separate and apart from, and shall form no part of, any deportation or removal hearing." However, nothing in the regulation requires the judge that conducted the bond hearing to recuse himself. See id. Flores-Leon contends that by conducting the bond hearing, the immigration judge had access to information not admissible in the removal proceeding. Flores-Leon's claim fails because he did not identify any information that was provided at the bond hearing that the immigration judge incorrectly used to render a decision at the removal proceeding. Rather, a review of the immigration judge's oral decision reveals that he relied only on evidence properly admitted at the removal proceeding for his conclusion.

Flores-Leon then contends he was denied due process because the immigration judge asked the INS to pose certain questions to him when he was a witness. However, "the immigration judge has broad discretion to control the manner of interrogation in order to ascertain the truth." See Iliev v. INS, 127 F.3d 638, 643 (7th Cir. 1997). Moreover, a judge is permitted to ask questions in order to clarify issues. See id. In this case, the immigration judge's questions attempted to clarify both Flores-Leon's criminal status as well as his immigration status and, therefore, were permissible. Moreover, nothing in the record indicates any bias or denial of a fair trial.

Flores-Leon further contends that it was "fundamentally unfair" and violated due process for the immigration judge to draw adverse inferences from his silence. Flores-Leon's argument is baseless. Flores-Leon explicitly disavows any reliance on the Fifth Amendment privilege against self-incrimination for his silence. Moreover, an alien's refusal to answer non-incriminatory questions regarding his immigration status may be used as a basis for drawing adverse inferences. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1043, 104 S. Ct. 3479, 82 L.

Ed. 2d 778 (1984). Under Flores-Leon's logic, all an alien would have to do to avoid deportation is remain silent. Moreover, Flores-Leon's silence is irrelevant, as the immigration judge found the case against Flores-Leon to be overwhelming and that any negative inferences "would simply be superfluous."

Finally, Flores-Leon contends that he was denied due process under the Fifth Amendment because the BIA simply adopted the conclusion of the immigration judge and thereby failed to consider and adequately address the issues raised on appeal. In the present case, we have examined and rejected every claim that Flores-Leon contends the BIA neglected. Therefore, the combination of the immigration judge's oral decision and this opinion satisfies any constitutional concerns with respect to Flores-Leon's BIA appeal. See Guentchev, 77 F.3d at 1038 (rejecting nearly identical argument).

III.  Conclusion

The petition for review is DENIED insofar as it challenges the order of removal on the ground that Flores-Leon is not an aggravated felon. Insofar as the petition challenges the refusal to consider Flores-Leon's request for relief from removal, the petition is DISMISSED for lack of jurisdiction and the government's motion to dismiss is GRANTED.

FOOTNOTES

/1 We note that Flores-Leon has repeatedly signed his name as "Silverio Flores" throughout the record.

/2 Because the BIA summarily dismissed Flores-Leon's appeal, we "take the immigration judge's explanation as the Board's." Guentchev v. INS, 77 F.3d 1036, 1038 (7th Cir. 1996).

/3 Prior to the amendment, an "aggravated felony" under the INA included only "a crime of violence" for which the sentence "imposed . . . is at least 5 years." See IIRIRA sec.sec. 321(a)(3), 322(a)(2)(A). The term "crime of violence" means:

(a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. 18 U.S.C. sec. 16.

/4 Flores-Leon concedes that his 1994 conviction constitutes "sexual abuse of a minor" under the amended definition of "aggravated felony." See 8 U.S.C. sec. 1101(a)(43)(A). Therefore, we need not address whether his conviction also consti- tutes a "crime of violence" under the INA. See 8 U.S.C. sec. 1101(a)(43)(F).