# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2475

ROMAN ROBLEDO-GONZALES,

*Petitioner-Appellant,*

v.

JOHN D. ASHCROFT, Attorney General
of the United States, Commissioner,
IMMIGRATION AND NATURALIZATION SERVICE,
BOARD OF IMMIGRATION APPEALS, District
Director, et al.,[1]

*Respondents-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 5570—**William J. Hibbler**, *Judge.*

ARGUED JANUARY 24, 2003—DECIDED JULY 25, 2003

---

[1] In recent immigration cases, we have substituted the Attorney
General for the Immigration and Naturalization Service ("INS")
because, as of March 1, 2003, the INS ceased to exist as an
independent agency within the Department of Justice and its
functions were transferred to the newly formed Department of
Homeland Security. *See, e.g., Ciorba v. Ashcroft,* 323 F.3d 539 (7th
Cir. 2003). However, because this case is an action for habeas
corpus, and more specifically because it concerns whether the
petitioner, at the time the action was filed, named the proper
respondents, we maintain the caption of the original action.

Before RIPPLE, EVANS and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Roman Robledo-Gonzales sought a writ of habeas corpus seeking release from incarceration and other relief on the basis that the deportation order underlying his conviction was contrary to law. The district court denied Mr. Robledo-Gonzales relief. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

### 1. Deportation Proceedings

Mr. Robledo-Gonzales first entered the United States without inspection in 1980 and later became a lawful permanent resident. In 1993, Mr. Robledo-Gonzales pleaded guilty to a charge of possession with intent to deliver narcotics. He was sentenced to four years' imprisonment.

After his conviction, the INS instituted deportation proceedings against Mr. Robledo-Gonzales as an alien convicted of an aggravated felony. During a hearing before an Immigration Judge ("IJ"), Mr. Robledo-Gonzales applied for relief pursuant to 8 U.S.C. § 1182(c) (also referred to as § 212(c)).[2] The IJ denied Mr. Robledo-Gonzales' application

---

[2]  8 U.S.C. § 1182(c) (1995) provided:

> c) Nonapplicability of subsection (a)
>
> Aliens lawfully admitted for permanent resident who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful
>
> (continued...)

for § 212(c) relief, and Mr. Robledo-Gonzales appealed the IJ's decision to the Board of Immigration Appeals ("BIA").

While the appeal was pending before the BIA, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-308, 110 Stat. 3009 (1996), which substantially curtailed the ability of certain aliens to apply for discretionary relief and to seek judicial review of adverse administrative decisions. Relevant to this case, § 440(d) of AEDPA barred § 212(c) relief to individuals who had been convicted of certain drug offenses.

Also while Mr. Robledo-Gonzales' appeal was pending before the BIA, the Attorney General considered the effect of the § 440(d) bar on aliens whose petitions for discretionary relief were pending at the time of AEDPA's passage. *See Matter of Soriano,* Interim Dec. No. 3289 (AG Feb. 21, 1997). In *Soriano,* the Attorney General determined that § 440(d) of AEDPA precluded § 212(c) relief even for petitioners whose immigration cases were pending on the date of AEDPA's enactment.

---

[2] (...continued)

unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

On March 24, 1997, the BIA affirmed the IJ's denial of discretionary relief to Mr. Robledo-Gonzales. Specifically, the BIA cited *Soriano* and held that § 440(d) of AEDPA prevented it from granting Mr. Robledo-Gonzales the discretionary relief that he was seeking.

Shortly thereafter, the INS issued a warrant of deportation, and Mr. Robledo-Gonzales self-deported on May 16, 1997. Mr. Robledo-Gonzales never appealed the BIA's order, nor did he seek to challenge his deportation in any way.

### 2.   Criminal Proceedings

Mr. Robledo-Gonzales illegally reentered the Country only one year later. In February 2001, Mr. Robledo-Gonzales was apprehended and charged with violation of 8 U.S.C. § 1326(a) and (b)—illegal reentry. After Mr. Robledo-Gonzales had been charged, the Supreme Court handed down its opinion in *INS v. St. Cyr*, 533 U.S. 289 (2001), in which the Court reached a different conclusion than had the Attorney General concerning the availability of § 212(c) relief after AEDPA. The Court stated:

> We find nothing in IIRIRA unmistakably indicating that Congress considered the question to apply its repeal of § 212(c) retroactively to such aliens [as St. Cyr]. We therefore hold that § 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.

*Id.* at 326. Mr. Robledo-Gonzales moved to dismiss his indictment on the basis of the *St. Cyr* decision, but his motion was denied. Mr. Robledo-Gonzales then filed the present

action.[3] Mr. Robledo-Gonzales also filed a motion to reopen his deportation proceedings with the BIA on the same basis. *See* R.6, Ex.A.

## B. District Court Proceedings

In his habeas action, Mr. Robledo-Gonzales requested the following relief. First, Mr. Robledo-Gonzales sought an order that the 1997 deportation order was "null and void as unconstitutional." R.1 at 9. Mr. Robledo-Gonzales also requested an order "declaring the criminal proceedings instituted in the Northern District of Illinois . . . improper as unconstitutional." *Id.* Additionally, Mr. Robledo-Gonzales asked the district court to declare that "aliens who were unjustly and illegally deported in reliance of the Attorney General's now-defunct decision in *Matter of Soriano* have the right to apply for, or reassert their right to § 212(c) relief," despite an INS regulation to the contrary, 8 C.F.R. § 3.44.[4] *Id.* Finally, Mr. Robledo-Gonzales sought an order requiring the BIA to reopen his deportation proceedings "to enable him to reassert his previously denied application for § 212(c) relief . . . ." *Id.* at 10.

---

[3]  Mr. Robledo-Gonzales eventually pleaded guilty to the criminal indictment. His conviction currently is on appeal to this court. *See United States v. Robledo-Gonzales,* No. 02-3599.

[4]  The former 8 C.F.R. § 3.44 recently has been redesignated 8 C.F.R. § 1003.44; for the sake of consistency, we use the former designation throughout this opinion.

The respondents then filed a motion to dismiss the petition,[5] and the district court granted the motion. The district court first determined that, because the BIA now had denied the motion to reopen, *see* R.6, Ex.1, that ruling was ripe for review. However, citing this court's decisions in *Sharif v. Ashcroft*, 280 F.3d 786 (7th Cir. 2002), and *Chowdhury v. Ashcroft*, 241 F.3d 848 (7th Cir. 2001), the district court concluded that Mr. Robledo-Gonzales had filed the action in the wrong court; any review of the denial of the motion to reopen should have been taken to this court.

With respect to the 1997 removal order, the district court held that the Supreme Court's decisions in *INS v. St. Cyr*, 533 U.S. 289 (2001), and *Calcano-Martinez v. INS*, 533 U.S. 348 (2001), allowed it to entertain a habeas action that raised pure questions of law. However, the court rejected Mr. Robledo-Gonzales' argument that these recent Supreme Court decisions afforded every convicted alien a constitutional right to seek § 212(c) relief. Furthermore, the court noted that Mr. Robledo-Gonzales had applied for § 212(c) relief before the IJ; the IJ, however, had denied Mr. Robledo-Gonzales that relief after a full hearing. Consequently, because Mr. Robledo-Gonzales had not suffered any prejudice from the alleged deprivation, no constitutional violation had occurred.

Mr. Robledo-Gonzales timely appealed the district court's dismissal of his habeas petition.

---

[5] One ground of dismissal urged by the respondents was that the issue of the motion to reopen was not ripe because the BIA had not yet ruled on the motion. *See* R.3, ¶ 2.

## II

## ANALYSIS

### A.  Propriety of the Petition for Habeas Corpus

The respondents maintain that Mr. Robledo-Gonzales is not currently in their custody, nor was he at the time he filed his petition for the writ of habeas corpus. Consequently, they argue, this court should dismiss the petition. We agree.

Mr. Robledo-Gonzales brings his present action pursuant to 28 U.S.C. § 2241. Although § 2241 is the substantive provision for the writ of habeas corpus, 28 U.S.C. §§ 2242 and 2243 set forth the procedure one must follow to bring a petition and to obtain the relief of the writ. Specifically, application for the writ "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known." 28 U.S.C. § 2242 ¶ 2. The court must then issue the writ or issue an order to show cause why the writ should not be granted. *See* 28 U.S.C. § 2243 ¶ 1. That document "shall be directed to the person having custody of the person detained." *Id.* ¶ 2. Furthermore, unless the writ raises only issues of law, "the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained." *Id.* ¶ 5. These procedural requirements establish that "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973). Consequently, a petition for a writ of habeas corpus must be directed to the individual or individuals who holds the petitioner in allegedly unlawful custody.

Furthermore, it is not sufficient that the named respondent simply be involved, in some manner, with the petitioner's detention. Sections 2242 and 2243 "indicate that the custodian is the person having a day-to-day control over the prisoner." *Guerra v. Meese*, 786 F.2d 414, 416 (D.C. Cir. 1986). Specifically, when a prisoner is serving a sentence in a federal facility, "the warden of that facility is the prisoner's custodian within the meaning of 28 U.S.C. § 2242-2243 . . . ." *Id.*

At the time the present petition was filed, Mr. Robledo-Gonzales was incarcerated awaiting trial on the charge of illegal reentry. Consequently, the proper respondent to Mr. Robledo-Gonzales' habeas petition was the warden of the facility in which Mr. Robledo-Gonzales was being held. *See id.*[6] Mr. Robledo-Gonzales' petition, however, failed to name the warden of the facility in which he was being detained. Mr. Robledo-Gonzales' petition named only the Attorney General, the Commissioner of the INS and the District Director of the INS, none of whom possessed "day-to-day" control over Mr. Robledo-Gonzales at the time the petition was filed.

Despite this shortcoming, Mr. Robledo-Gonzales maintains that the court nevertheless should entertain the petition against the named respondents for a number of reasons. First, he notes that "the 'in-custody' requirement is determined at the time of the filing of the petition," and he "was detained at the time of the filing of his petition." Reply Br. at 6. We do not dispute this as a general principle, *see, e.g.,*

---

[6] If Mr. Robledo-Gonzales had been released on bail pending his trial on the charge, the proper respondent would have been the court under whose order Mr. Robledo-Gonzales was temporarily released. *See Reimnitz v. State's Attorney of Cook County*, 761 F.2d 405, 409 (7th Cir. 1985).

*Carafas v. Lavallee*, 391 U.S. 234, 238 (1968); however, it does little to forward Mr. Robledo-Gonzales' argument. Specifically, the question here is not *whether* Mr. Robledo-Gonzales was "in custody" per se at the time his petition was filed, but *who* held Mr. Robledo-Gonzales in custody at the time he filed his petition. As set forth above, "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden*, 410 U.S. at 494-95. Here, Mr. Robledo-Gonzales failed to name as a respondent the person holding him in allegedly unlawful custody.

Mr. Robledo-Gonzales also argues that, for purposes of this case, the Attorney General should be considered the legal custodian because "he controls the deportation and criminal processes for enforcement of the immigration laws." Reply Br. at 6. Again, this argument misses the mark. The power to control some aspect of the petitioner's legal process does not render that official the petitioner's custodian for habeas purposes. In rejecting this argument with respect to the Parole Commission, the District of Columbia Circuit stated:

> Appellees argue that because the Commission has the power to release them, the commission is their custodian. But their argument extends to any person or entity possessing some sort of power to release them. Under appellees' theory, the Attorney General of the United States could be considered the custodian of every prisoner in federal custody because he supervises the Federal Bureau of Prisons. *See* 18 U.S.C. § 4041 (1982). We have specifically rejected this interpretation. *Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945).

*Guerra*, 786 F.2d at 416; *see also Chatman-Bey v. Thornburgh*, 864 F.2d 804, 811 (D.C. Cir. 1988) ("Thus it should be abundantly clear that habeas petitioners, such as Chatman-Bey,

cannot properly bring suit against such officials as the Attorney General and such entities as the Parole Commission. Rather the proper defendant in federal habeas cases is the warden.").

Finally, Mr. Robledo-Gonzales points to a number of district court cases in which the courts have found that the Attorney General was the proper respondent when a petitioner brings a habeas petition to challenge the execution of a final order of removal. *See, e.g., Lee v. Ashcroft*, 216 F. Supp. 2d 51 (S.D.N.Y. 2002). Although at least one circuit has addressed and soundly rejected this approach, *see Vasquez v. Reno*, 233 F.3d 688, 693 (1st Cir. 2000), we need not reach the issue. Here, Mr. Robledo-Gonzales is not being detained under a final order of deportation. Mr. Robledo-Gonzales was not the subject of immigration proceedings at the time his petition was filed, nor is he at the present time. Indeed, neither the INS nor its successor agency, the Department of Homeland Security, has taken even the preliminary step of filing a notice of detainer with the criminal authorities. Consequently, the cases cited by Mr. Robledo-Gonzales simply are not applicable to the present situation.

Thus, at the time his petition was filed, Mr. Robledo-Gonzales was not in the custody of any of the named respondents for habeas purposes. "Absent custody by the authority against whom relief is sought, jurisdiction usually will not lie to grant the requested writ." *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988); *see also Vasquez*, 233 F.3d at 697 ("Because the petitioner did not direct his habeas petition 'to the person having custody of the person detained,' 28 U.S.C. § 2243, the district court ought not to have acted on the merits."); *DiGrado v. Ashcroft*, 184 F. Supp. 2d 227, 232 (N.D.N.Y. 2002) (holding that, because the petitioner named the incorrect respondent, "jurisdiction is lacking pursuant to § 2241"). We therefore

affirm the district court's judgment dismissing Mr. Robledo-Gonzales' petition for the writ of habeas corpus for failing to name the proper custodian.[7]

---

[7] The respondents maintain that, even if Mr. Robledo-Gonzales had named the proper custodian in his habeas action, there are other barriers to our granting relief, namely, that Mr. Robledo-Gonzales has waived any challenge to the 1997 deportation order by departing the Country. According to the respondents, the former 8 U.S.C. § 1105a bars habeas relief to aliens who have left the Country pursuant to a deportation order. That provision states:

> An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available as of right under the immigration laws and regulations *or if he has departed from the United States after the issuance of the order.* Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld in any prior judicial proceeding, and, if so, the nature and date thereof, and the court in which such proceeding took place. No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order.

8 U.S.C. § 1105a(c) (1995) (emphasis added). Consequently, a district court cannot review an order of deportation by way of habeas if the petitioner has departed after issuance of the order. *See, e.g., Goonsuwan v. Ashcroft,* 252 F.2d 383, 387 (5th Cir. 2001).

Mr. Robledo-Gonzales counters that the former § 1105a does not apply to him by virtue of IIRIRA's transitional rules. Those rules provide in relevant part:

(continued...)

---

[7]  (...continued)

**(c)  Transition for certain aliens.—**

**(1) General rule that new rules do not apply.**—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before the title III-A effective date—

**(A)** the amendments made by this subtitle shall not apply, and

**(B)** the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

. . .

**(4) Transitional changes in judicial review.**—In the case in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act [Sept. 30, 1996], *notwithstanding any provision of section 106 of the Immigration and Nationality Act [section 1105a of this title] (as in effect as of the date of the enactment of this Act [Sept. 30, 1996]) to the contrary—*

. . .

**(G)**  *there shall be no appeal permitted in the case of an alien who is inadmissible or deportable* by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act [sections 1182(a)(2) or 1251(a)(2)(A)(iii), (B), (C), or (D) of this title] (as in effect as of the date of the enactment of this Act) [Sept. 30, 1996], or any offense covered by section 241(a)(2)(A)(ii) of such Act [section 1251(a)(2)(A)(ii) of this title] (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act [section 1251(a)(2)(A)(i) of this title] (as so in effect).

(continued...)

---

[7] (...continued)
8 U.S.C. § 1101 (statutory notes) (emphasis added).

Mr. Robledo-Gonzales acknowledges that the transitional rules generally exempt from IIRIRA's coverage those individuals whose proceedings were instituted prior to IIRIRA's passage. However, he also points out that the transitional rules state that, notwithstanding any provisions of § 1105a, there is no further review of BIA orders for individuals whose final order of deportation issued after October 30, 1996, and who were found deportable because of the commission of certain offenses. Because he falls within these categories, Mr. Robledo-Gonzales maintains that he is excepted from the general rule that the provisions of § 1105a, including the bar to habeas relief for aliens who have departed the Country, apply. We disagree.

The general rule, set forth in subsection (c), quoted above, is that aliens in removal proceedings prior to IIRIRA's effective date will continue to be governed by the administrative process that existed prior to IIRIRA's passage. However, subsection (c)(4)(G) of the transitional rules states that "notwithstanding any provision of section 106 of the Immigration and Nationality Act [8 U.S.C. § 1105a] to the contrary," there shall be no judicial review in the cases of certain aliens.

The question then becomes whether the bar to habeas relief contained in § 1105a is contrary to the provision of the transitional rules that bars judicial review. We have to conclude, in light of the Supreme Court's recent decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), that the two provisions are not at odds. As will be discussed in greater detail below, the Court in *St. Cyr* determined that habeas relief and judicial review have had "historically distinct meanings" in the immigration context. *Id.* at 311. Thus, a provision that barred judicial review would not necessarily implicate the right to bring a habeas petition; it certainly would not be "contrary" to a provision that bars habeas relief. Thus, we believe that § 1105a's general bar to habeas for those who have

(continued...)

**B.   Review of Motion to Reopen**

   **1.   Proper Forum for Review**

As noted above, in addition to bringing his habeas action in the district court, Mr. Robledo-Gonzales also filed a motion to reopen proceedings with the BIA on the ground that the BIA erred when it denied his application for § 212(c) relief based on *Soriano*. The BIA denied the motion to reopen; it stated:

> [I]n his motion the respondent reported that he self-deported to his native country of Mexico subsequent to the Immigration Judge's noted decision. As such, this Board is without jurisdiction to consider the respondent's motion. 8 C.F.R. § 3.2(d)(2001) (a motion to reopen shall not be made by a person who is the subject

---

[7] (...continued)
departed the Country after a final order of deportation is not contrary to the provision of the transitional rules barring judicial review, and we conclude that § 1105a's bar applies to Mr. Robledo-Gonzales. Therefore, pursuant to the former 8 U.S.C. § 1105a(c), Mr. Robledo-Gonzales waived his right to seek habeas review when he departed the Country in 1997.

Mr. Robledo-Gonzales further maintains that if he is subject both to the bar to judicial review contained in subsection (c)(4)(G) of the transitional rules and is also subject to the bar to habeas relief contained in § 1105a(c), then a due process issue arises because he is left without a judicial forum in which he might challenge any errors in the immigration process. Again, we disagree. As we shall explain later in this opinion, this court has recognized the existence of "safety valve" review in the courts of appeals to protect petitioners against bizarre miscarriages of justice and substantial constitutional violations. *See Lara-Ruiz v. INS*, 241 F.3d 934, 939 (7th Cir. 2001).

of deportation proceedings subsequent to his departure from the United States).

R.6, Ex.1.

Before the district court, Mr. Robledo-Gonzales claimed that the BIA's failure to reopen the proceedings was a violation of his equal protection rights, citing *St. Cyr*. The district court determined that the issue was not properly before it because this court has exclusive jurisdiction to review decisions of the BIA.

Mr. Robledo-Gonzales claims that the district court's failure to consider the challenge to the denial of the motion to reopen was in error. According to Mr. Robledo-Gonzales, his only recourse to challenge the denial of the motion to reopen was through habeas because IIRIRA and AEDPA curtailed his right to judicial review of BIA actions in the courts of appeals. We agree with the district court that Mr. Robledo-Gonzales should have sought review of the denial of the motion to reopen in this court. A brief review of recent Supreme Court and circuit cases is helpful in understanding our conclusion.

### a. *St. Cyr*

We begin our review with the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). In *St. Cyr*, the petitioner, a lawful permanent resident, pleaded guilty in March of 1996 to a state-court charge of selling a controlled substance. In April 1997, after the passage of IIRIRA and AEDPA, the INS instituted deportation proceedings against him. The INS (and BIA) took the position that, under IIRIRA and AEDPA, the Attorney General no longer had the discretion to grant § 212(c) relief to petitioners such as St.

Cyr.[8] St. Cyr responded by filing a habeas action seeking a determination of his right to apply for § 212(c) relief. In that action, the Attorney General argued that, not only did AEDPA and IIRIRA withdraw his ability to grant discretionary relief under § 212(c), but also, "as a result of other amendments adopted in AEDPA and IIRIRA, . . . there [was] no judicial forum available to decide whether these statutes did, in fact, deprive him of the power to grant such relief." *Id.* at 297.

The Supreme Court rejected the Attorney General's position. The Court stated that under the pre-1996 statutory scheme, a petitioner could have challenged the Attorney General's position through a habeas proceeding. Furthermore, the Court held that nothing in IIRIRA or AEDPA clearly abrogated a petitioner's right to seek habeas relief for pure questions of law. Most pertinent for our purposes, the

---

[8]  In *St. Cyr*, the Supreme Court recounted the ways in which Congress had cut back on § 212(c) relief:

> Three statutes enacted in recent years have reduced the size of the class of aliens eligible for such discretionary relief. In 1990, Congress amended § 212(c) to preclude from discretionary relief anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years. In 1996, in § 440(d) of AEDPA, Congress identified a broad set of offenses for which convictions would preclude such relief. And finally, that same year, Congress passed IIRIRA. That statute, *inter alia*, repealed § 212(c), and replaced it with a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens. So narrowed, that class does not include anyone previously "convicted of any aggravated felony."

*St. Cyr*, 533 U.S. at 297 (citations and footnote omitted).

Court held that 8 U.S.C. § 1252(a)(2)(C)[9] does not affect a petitioner's ability to seek habeas relief. The Court stated:

> The term "judicial review" or "jurisdiction to review" is the focus of each of these three provisions. In the immigration context, "judicial review" and "habeas corpus" have historically distinct meanings. In *Heikkila*, the Court concluded that the finality provisions at issue "preclud[ed] judicial review" to the maximum extent possible under the Constitution, and thus concluded that the APA was inapplicable. Nevertheless, the Court reaffirmed the right to habeas corpus. Noting that the limited role played by the courts in habeas corpus proceedings was far narrower than the judicial review authorized by the APA, the Court concluded that "it is the scope of inquiry on habeas corpus that differentiates" habeas review from "judicial review." Both §§ 1252(a)(1) and (a)(2)(C) speak of "judicial review"— that is, full, nonhabeas review. Neither explicitly mentions habeas, or 28 U.S.C. § 2241. Accordingly, neither provision speaks with sufficient clarity to bar jurisdiction pursuant to the general habeas statute.

*Id.* at 311-13 (quoting *Heikkila v. Barber*, 345 U.S. 229, 235-36 (1953); additional citations and footnotes omitted). After determining that habeas review was still available to the

---

[9]  8 U.S.C. § 1252(a)(2)(C) provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed an offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

petitioner, the Court turned to the merits of the claim; it noted that

> [t]wo important legal consequences ensued from respondent's entry of a guilty plea in March 1996: (1) He became subject to deportation, and (2) he became eligible for a discretionary waiver of that deportation under the prevailing interpretation of § 212(c). When IIRIRA went into effect in April 1997, the first consequence was unchanged except for the fact that the term "removal" was substituted for "deportation." The issue that remains to be resolved is whether IIRIRA § 304(b) changed the second consequence by eliminating respondent's eligibility for a waiver.

*Id.* at 314-15. The Court further explained why these consequences were significant in determining whether the bar on § 212(c) was retroactive:

> IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past. Plea agreements involve a *quid pro quo* between a criminal defendant and the government. In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions. Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of

the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.

*Id.* at 321-23 (internal quotation marks, citations and footnotes omitted). After reviewing these effects, the Court held that the bar to discretionary relief contained in IIRIRA did not apply to those whose convictions were obtained through plea agreements that occurred prior to the law's passage:

> Prior to AEDPA and IIRIRA, aliens like St. Cyr had a significant likelihood of receiving § 212(c) relief. Because respondent, and other aliens like him, almost certainly relied upon that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect.
>
> We find nothing in IIRIRA unmistakably indicating that Congress considered the question whether to apply its repeal of § 212(c) retroactively to such aliens. We therefore hold that § 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.

*Id.* at 325-26 (footnotes omitted).


### b. *Calcano-Martinez*

In *Calcano-Martinez v. INS*, 533 U.S. 348 (2001), a companion case to *St. Cyr*, the Court applied the holding in *St. Cyr* and upheld the petitioners' right to seek habeas relief. However, in doing so, the Court made the following observation concerning IIRIRA's bar to judicial review:

> The scope of this preclusion is not entirely clear. Though the text of the provision is quite broad, it is not without its ambiguities. Throughout this litigation, the Government has conceded that the courts of appeals have the power to hear petitions challenging the factual determinations thought to trigger the jurisdiction-stripping provision (such as whether an individual is an alien and whether he or she has been convicted of an "aggravated felony" within the meaning of the statute). In addition, the Government has also conceded that the courts of appeals retain jurisdiction to review "substantial constitutional challenges" raised by aliens who come within the strictures of § 1252(a)(2)(C). As the petitions in this case do not raise any of these types of issues, we need not address this point further.

*Id.* at 350 n.2 (citations omitted). Consequently, the Supreme Court explicitly left open the possibility that judicial review, as opposed to habeas, was available to at least some aliens despite the seemingly absolute language of § 1252(a)(2)(C).

### c. Circuit case law

Soon after the passage of IIRIRA and AEDPA, this court recognized that § 1252(a)(2)(C) did not operate as a complete bar to judicial review of BIA decisions. In *LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir. 1998), we noted that, despite this provision, courts of appeals maintained the power to consider constitutional issues and to correct "bizarre miscarriages of justice." *Id.* at 1040. We further explained this power in *Lara-Ruiz v. INS*, 241 F.3d 934 (7th Cir. 2001). We stated:

> Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Therefore, § 1252(a)(2)(C) gen-

erally eliminates our jurisdiction to review any final order of deportation against an alien convicted of an aggravated felony. However, we retain jurisdiction to determine whether we have jurisdiction—that is, to determine whether an alien's criminal conviction is indeed an "aggravated felony" under the INA, thereby triggering the jurisdictional bar of § 1252(a)(2)(C). *See, e.g., Xiong v. INS*, 173 F.3d 601, 604 (7th Cir. 1999); *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir. 1997). Moreover, in addressing a similar jurisdictional bar announced in an earlier enacted amendment to the INA, we have held that an alien may challenge his deportability on constitutional grounds directly in the courts of appeals, provided that he raises a substantial constitutional claim. *See Morales-Ramirez v. Reno*, 209 F.3d 977, 980 (7th Cir. 2000); *Singh v. Reno*, 182 F.3d 504, 509 (7th Cir. 1999); *LaGuerre v. Reno*, 164 F.3d 1035, 1040 (7th Cir. 1998). Thus, while we honor Congress' intent to curtail judicial review of final deportation orders for certain disfavored criminals, we have retained jurisdiction over any substantial constitutional claims raised as a "safety valve" to prevent "bizarre miscarriages of justice." *See LaGuerre*, 164 F.3d at 1040.

*Id.* at 939. *See also Flores-Leon v. INS,* 272 F.3d 433, 437-38 (7th Cir. 2001). We then set out the path a court must follow to determine whether it could address a petitioner's claims:

[W]e must first determine whether the BIA correctly concluded that Lara-Ruiz was "an alien deportable by reason of having committed an aggravated felony." If we answer this question in the affirmative, we must then consider whether Lara-Ruiz has nevertheless raised substantial constitutional claims, and we may assert jurisdiction over Lara-Ruiz' claims only if we find that he has.

*Lara-Ruiz*, 241 F.3d at 939. After determining that the petitioner was, in fact, an aggravated felon, we went on to address and reject his claims that his due process and equal protection rights had been violated.

It is true that this court's recognition of "safety valve" review in the courts of appeals, in cases such as *LaGuerre* and *Lara-Ruiz*, coincided with our conclusion that IIRIRA and AEDPA had abolished habeas review for certain categories of aliens. *See LaGuerre*, 164 F.3d at 1038-40. However, the Supreme Court's decision in *St. Cyr*, reaching the opposite conclusion with respect to IIRIRA's and AEDPA's effect on habeas review, has not altered our view that the courts of appeals still play a role in reviewing substantial constitutional questions arising in the immigration context. *See, e.g., Gomez-Chavez v. Perryman*, 308 F.3d 796, 800-01 (7th Cir. 2002), *petition for cert. filed*, 71 USLW 3680 (U.S. Mar. 10, 2003) (No. 02-1529); *Sharif v. Ashcroft*, 280 F.3d 786, 788 (7th Cir. 2002). Specifically in *Gomez-Chavez*, this court stated:

> Although § 1252(g) bars Gomez-Chavez from obtaining an order commanding the INS to adjust his status or precluding his removal, this does not mean that the courts have ceased to exist for cases in which a true miscarriage of justice may be occurring. *LaGuerre v. Reno*, 164 F.3d at 1040. For example, the Supreme Court held in *INS v. St. Cyr*, 533 U.S. 289 (2001), that the district courts continue to have jurisdiction under 28 U.S.C. § 2241 to entertain habeas corpus petitions based on pure questions of law. Furthermore, the observation in this court's decision in *Yang v. INS*, 109 F.3d 1185 (7th Cir. 1997), remains true: the review-preclusion provisions in the 1996 amendments to the immigration laws do not preclude the court of appeals from determining whether the alien is being removed for a permissible reason. Thus, the agency does not have the "final say on

> constitutional matters"; instead, that power rests with the courts. *Singh* [*v. Reno*, 182 F.3d 504, 510 (7th Cir. 1999)].

308 F.3d at 800 (parallel citations omitted); *see also Brooks v. Ashcroft*, 283 F.3d 1268, 1273 (11th Cir. 2002) (stating that the court of appeals is not "foreclosed from consideration of Brooks' Petition [for review] if he has raised substantial constitutional issues").

In sum, this court repeatedly has acknowledged its authority to review substantial constitutional questions presented through a petition for review of a final order of the BIA. Furthermore, this court has continued to assert its jurisdiction to review substantial constitutional questions even after the Supreme Court's decision in *St. Cyr*. Finally, the Supreme Court has not held that the ability of the district courts to entertain an alien's habeas action negates the authority of the courts of appeals to consider substantial constitutional questions when presented through a petition for review of a decision of the BIA. *See Calcano-Martinez*, 533 U.S. at 350 n.2. Consequently, because Mr. Robledo-Gonzales raises a constitutional challenge to the BIA's application of its regulation in the denial of his motion to reopen, we believe that the district court properly determined that review of the equal protection issue should have been directed to this court.[10]

---

[10] This court's decision in *Bosede v. Ashcroft*, 309 F.3d 441 (7th Cir. 2002), does not alter the above analysis. In *Bosede*, the petitioner had applied for both asylum and withholding of deportation. Bosede initially had argued that he was eligible for asylum and that he was denied due process because his counsel had not challenged the convictions upon which the deportation proceedings were based and which rendered him ineligible for asylum.

(continued...)

---

[10] (...continued)

The INS claimed that this court did not have jurisdiction to consider Bosede's claims on appeal. This court stated:

> Bosede's claim is governed by the rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Before proceeding to the merits we address the INS's contention that we do not have jurisdiction to hear Bosede's appeal because Bosede is removable as a criminal alien. 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense. . . ."). Although the INS has accurately quoted the statute, matters are more complex than it is willing to admit. At a minimum, this court retains jurisdiction to determine its own jurisdiction. *Flores-Leon v. INS*, 272 F.3d 433, 437 (7th Cir. 2001). We have held before on a number of occasions that the review-preclusion provisions in the 1996 amendments to the immigration laws do not prevent us from determining whether the alien is being removed for a permissible reason. *Sandoval v. INS*, 240 F.3d 577, 580 (7th Cir. 2001); *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir. 1997). Under the Supreme Court's decisions in *Calcano-Martinez v. INS*, 533 U.S. 348 (2001), and *INS v. St. Cyr*, 533 U.S. 289 (2001), it is also clear that Bosede may not raise other constitutional or statutory challenges in a direct review petition, but that habeas corpus under 28 U.S.C. § 2241 remains available for some such claims. *See Calcano-Martinez*, 533 U.S. at 351. We are therefore precluded from considering in the present appeal Bosede's claim that his Fifth Amendment due process rights were violated in the proceedings before the IJ, and we express no opinion on that argument.

*Id.* at 445-46 (parallel citations omitted). However, on appeal, Bosede conceded that he was ineligible for asylum. The court "therefore [was] concerned only with the BIA's finding that he

(continued...)

Despite circuit case law establishing the right of aliens to present substantial constitutional questions to this court through a petition for review of a final order of the BIA, Mr. Robledo-Gonzales did not seek direct review of the BIA's denial of the motion to reopen in this court. Consequently, Mr. Robledo-Gonzales' constitutional challenges concerning the BIA's failure to reopen are not properly before this court.

---

[10] (...continued)
was ineligible for withholding of removal and deferral under [the Convention Against Torture] because of the 1993 felony conviction." *Id.* at 446. With respect to his appeal of this claim, Bosede had submitted evidence that the 1993 conviction was not a "particularly serious" crime that rendered him ineligible for withholding of removal. *Id.* at 447. The court concluded, however, that "[t]his is the kind of argument Bosede must submit first to the agency . . ."; "the law entitles the INS to an initial opportunity to consider the evidence and correct its error." *Id.* Consequently, the court did not need to reach the question whether Bosede was entitled to statutory relief or whether he had suffered a constitutional deprivation. Therefore, the court's earlier commentary on the availability of review for constitutional and statutory-interpretation questions was dicta.

Finally, we note that the *Bosede* decision was not circulated pursuant to Circuit Rule 40(e) and, therefore, cannot overrule this court's prior decisions concerning the availability or scope of appellate review of final orders of the BIA. *See Brooks v. Walls,* 279 F.3d 518, 522 (7th Cir. 2002) ("One panel of this court cannot overrule another implicitly. Overruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e)."), *cert. denied,* 123 S. Ct. 1899 (2003).

### 2.   Equal Protection Violation

However, even if there were a viable procedural path by which we could address Mr. Robledo-Gonzales' equal protection challenge, it is clear that those challenges are completely without merit.[11] Mr. Robledo-Gonzales argues that 8 C.F.R. § 3.44, which precludes "[a]liens with a final order of deportation who have illegally returned to the United States" from applying for § 212(c) relief,[12] is unconstitutional because it runs afoul of the Supreme Court's decision in *St. Cyr* and because it irrationally distinguishes one group of aliens from another.[13] According to Mr.

---

[11] Mr. Robledo-Gonzales makes no argument that we ought to consider his appeal of this habeas corpus action in the alternative as a petition for review of the BIA's denial of the motion to reopen. Therefore, we need not consider whether we have the authority to do so. Nor need we consider the issue of timeliness.

[12] Section 3.44 generally allows aliens who were affected by the *Soriano* decision to move to reopen their proceedings to apply for § 212(c) relief. However, § 3.44(i) precludes the following groups of aliens from seeking relief: "(1) Aliens who have departed the United States; (2) Aliens with a final order of deportation who have illegally returned; or (3) Aliens who have not been admitted or paroled." 8 C.F.R. 3.44(i).

[13] We note that, in the denial of his motion to reopen, issued after Mr. Robledo-Gonzales filed his habeas action but before the district court issued its opinion, the BIA stated: "[I]n his motion the respondent reported that he self-deported to his native country of Mexico subsequent to the Immigration Judge's noted decision. As such, this Board is without jurisdiction to consider the respondent's motion. 8 C.F.R. § 3.2(d) (2001) (a motion to reopen shall not be made by a person who is the subject of deportation proceedings subsequent to his departure from the United States)." R.6, Ex.1. Although the BIA certainly could have

(continued...)

---

[13] (...continued)
invoked § 3.44 to deny Mr. Robledo-Gonzales relief, it did not do so.

Mr. Robledo-Gonzales does launch an attack, of sorts, on 8 C.F.R. § 3.2(d) as well. We note, however, that Mr. Robledo-Gonzales never presented this argument to the district court; thus, this argument has been waived. *See Whitehead v. Cowan*, 263 F.3d 708, 730 n.5 (7th Cir. 2001), *cert. denied*, 534 U.S. 1116 (2002). However, even if we could address his arguments on the merits, we would find them lacking. Mr. Robledo-Gonzales points to BIA precedent holding that it is permissible to launch a collateral attack on a deportation order, even after the order has been executed, if one can establish a gross miscarriage of justice. *See* Petitioner's Br. at 39. According to Mr. Robledo-Gonzales, "[t]he use of § 3.2(d) to justify the denial of Petitioner's motion is plainly wrong in light of the Board's precedent decisions." Petitioner's Br. at 39. However, despite the BIA's acknowledgment that a petitioner can launch a collateral attack on a prior deportation proceeding if there is a gross miscarriage of justice, *see, e.g., Matter of La Grotta*, 14 I & N Dec. 110, 111-12 (BIA 1972), the BIA found such a miscarriage in only two of the cases cited by Mr. Robledo-Gonzales, *Matter of Farinas*, 12 I & N Dec. 467 (BIA 1967), and *Matter of Malone*, 11 I & N Dec. 730 (BIA 1966). In those cases, the Board determined that there had been a gross miscarriage of justice because the individual should not have been deported based on the law as it existed at the time of the original deportation. The BIA made this clear in *Malone*: "We are neither reevaluating evidence nor applying an interpretation of law made subsequent to the time of the original deportation decision. We merely state that, on the basis of judicial and administrative decisions existing at the time of the original proceeding, no order of deportation should have been entered." *Malone*, 11 I & N Dec. at 731-32. Such is not the case with Mr. Robledo-Gonzales, who seeks to have applied to him "an interpretation of the law made subsequent to the time of the original deportation decision,"

(continued...)

Robledo-Gonzales, *St. Cyr* mandates that all aliens, regardless of whether they have left the Country or returned illegally, are entitled to apply for § 212(c) relief. As well, continues Mr. Robledo-Gonzales, the Attorney General cannot justify the regulation as complying with *St. Cyr* because it initially was promulgated prior to *St. Cyr* and did not acknowledge that *Soriano*'s retroactivity analysis was in error. Finally, Mr. Robledo-Gonzales claims that there is no legitimate reason to deny § 212(c) relief to aliens who have illegally reentered the Country.

"Classifications that distinguish among groups of aliens are subject to rational basis review, and will be found valid if not arbitrary or unreasonable." *Brooks v. Ashcroft*, 283 F.3d 1268, 1274 (11th Cir. 2002). "Under this slight standard of review, the distinctions made by the government are given a strong presumption of validity. The government need only articulate a rational reason for making the distinction, and need not provide any evidence to support the rationality of the reason." *Domond v. INS*, 244 F.3d 81, 87 (2d Cir. 2001).

The respondents have set forth several reasons for denying those who have entered the Country illegally after a final order of deportation the opportunity to apply for § 212(c) relief; we focus on only one of those reasons. The respondents maintain that the rule discourages individuals from entering the Country illegally to apply for different types of relief. We believe this consideration suffices as a rational basis for denying § 212(c) relief to those who have illegally reentered the Country. The United States has a legitimate interest in seeing that individuals who cross their

---

[13] (...continued)
namely *St. Cyr*. Consequently, Mr. Robledo-Gonzales has failed to come forward with any BIA precedent that supports a finding of a gross miscarriage of justice in his case.

borders do so legally and in accordance with set procedures. It has a corollary interest in deterring individuals from crossing its borders illegally; illegal reentries put the safety of aliens and law enforcement personnel at risk and, more generally, frustrate the orderly administration of the nation's immigration laws.

We note that other courts have recognized the legitimacy of this rationale. In *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169 (9th Cir. 2001), the Ninth Circuit accepted this justification for implementing 8 C.F.R. § 3.44. In that case, the Ninth Circuit, rejecting an equal protection challenge to § 3.44, stated:

> Alvarenga finally contends that 8 C.F.R. § 3.44(i) violates the equal protection clause because it arbitrarily and irrationally discriminates between two classes of aliens without a rational purpose. We disagree. Distinctions between different classes of aliens in the immigration context are subject to rational basis review and must be upheld if they are rationally related to a legitimate government purpose. *Ram v. INS*, 243 F.3d 510, 517 (9th Cir. 2001). Section 3.44 permits certain aliens who were in deportation proceedings before April 24, 1996 to file a motion to reopen to seek § 212(c) relief that they were denied on the basis of the 1997 decision of the Attorney General in *In re Soriano*, 21 I. & N. Dec. 516, 1996 WL 426888 (BIA 1996), which was overruled by *Magana-Pizano*. Section 3.44(i), however, states that "[a]liens with a final order of deportation who have illegally returned to the United States" are not eligible for reopening under § 3.44. The government has a legitimate interest in discouraging aliens who have already been deported from illegally reentering, and this distinction is rationally related to that purpose.

*Id.* at 1174.

Consequently, because the Attorney General has proffered a rational basis for distinguishing an alien who has reentered the Country illegally from one who never had departed with respect to § 212(c) relief, we do not believe that § 3.44 runs afoul of the Equal Protection Clause.[14]

## Conclusion

For the foregoing reasons, the judgment of the district court dismissing Mr. Robledo-Gonzales' petition for the writ of habeas corpus is affirmed.

AFFIRMED

A true Copy:

    Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[14] We also find unpersuasive Mr. Robledo-Gonzales' other attacks on § 3.44. As noted above, Mr. Robledo-Gonzales questions the validity of the regulation because, when the initial version was promulgated, it did not acknowledge the invalidity of *Soriano*. However, the fact that the regulation did not immediately renounce *Soriano* in its entirety does not mean that the distinction drawn in the regulation, among aliens who have reentered illegally and aliens who have never departed, is illegitimate. Mr. Robledo-Gonzales also criticizes the regulation because *St. Cyr* did not specifically hold that aliens could be treated differently based on the fact that they had reentered the Country illegally. However, the petitioner in *St. Cyr* had not reentered the Country illegally. Consequently, the Court did not have an occasion to consider the legitimacy of this distinction.