**Anguel ILIEV and Elena Iliev, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 96–3964.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1997.

Decided Oct. 22, 1997.

Raymond J. Sanders (argued), Alexander Tsesis, Chicago, IL, for Petitioners.

Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL, David M. McConnell, Kristal A. Marlow, Michelle Gluck, Laura M. Friedman (argued), Brenda E. Ellison, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Anguel and Elena Iliev, citizens of Bulgaria, seek review of an order of deportation issued by the Immigration and Naturalization Service. The Board of Immigration Appeals dismissed their appeal from the order of the Immigration Judge that had denied their application for asylum and for the withholding of deportation. For the reasons set forth in the following opinion, we affirm the decision of the Board and deny the petition for review.

## I

## BACKGROUND

### A. *Facts*

Anguel and Elena Iliev, husband and wife, entered the United States in January, 1991, as "nonimmigrant visitors for pleasure." They were authorized to remain in the Country until July, 1991, but stayed beyond that time. The Immigration and Naturalization Service ("INS") issued Orders to Show Cause against petitioners, charging them with deportability due to overstay on their visas. At a hearing before an Immigration Judge, deportability was conceded, and Mr. and Mrs. Iliev applied for asylum and withholding of deportation. The Immigration Judge denied these applications; that decision was affirmed by the Board of Immigration Appeals.

Mr. Iliev claims to have suffered past persecution in Bulgaria for his political beliefs and further states that he has a well-founded fear of future persecution if he returns to that country. In the proceedings before immigration authorities, he asserted that, in Bulgaria, he had been a proponent of democracy, an ardent supporter of the Union of Democratic Forces ("UDF"), and an anticommunist activist. He claims that his opposition to the communist regime began in 1979 when he and his father participated, by circulating petitions and organizing meetings, in efforts to save his home from demolition as part of an urban renewal project. As a result of this activity, he maintains, he was fired from his job. In addition, Mr. Iliev claims that his father was arrested and beaten for participating in the campaign. This beating caused an artery in his brain to rupture, which ultimately led to his death a few years later.

The next events cited to support the claim of past persecution occurred in 1986 when Mr. Iliev was employed by a construction company as a truck driver. In October, 1986, while he was delivering building materials, part of his cargo fell out of his truck. The police arrested him for his part in the accident and proceeded to interrogate him. Mr. Iliev's written explanations were not considered adequate by the police; they continued to rip up his statements and required him to write new ones. Growing tired of this treatment, he became angry and called the police fascists. They beat him severely, causing him to lose his upper teeth. Mr. Iliev then was placed in a cell overnight which was too small to allow him to sit down. Upon his release, he was required to return several times to a police station to respond to further inquiries. Mr. Iliev claims he was questioned about his political activities and beliefs and about family members who had emigrated to the United States. Mr. Iliev's counsel asserts that, in light of this incident and the political nature of the subsequent interrogation, it is likely that the Bulgarian government has a file on Mr. Iliev and his family.

Mr. Iliev further claims that, after his 1986 arrest, he began to receive phone threats

that continued until he left for the United States. Mr. Iliev states that he was fired from his job in early 1987 due to the continued police inquiries into his political background. Thereafter, he took another job delivering packages. Mr. Iliev was arrested again in 1988, apparently for a traffic violation. While under arrest, he was interrogated again about his relatives in America.

In 1989, Mr. Iliev continues, he became more formally involved in the political process. He associated himself with the UDF, attending "95%" of their activities, and he began spreading pro-democracy propaganda. Mr. Iliev also hung a Bulgarian national flag outside his apartment, which apparently announced his pro-democracy stance. The apartment building was inhabited primarily by government workers who, he claims, did not react kindly to his flag or to his beliefs. His garden was vandalized after he hung the flag.

Mr. Iliev had a confrontation with one resident of the apartment building; he is particularly fearful that this individual would persecute him and his wife if they return to Bulgaria. According to Mr. Iliev, Ivan Donchev, one of his neighbors, is a member of the Bulgarian secret service and is connected with the mafia and with recently deposed communist leaders. Donchev and Mr. Iliev had a dispute over whether a certain janitor should continue to work in their apartment building, and this disagreement led to threats from Mr. Donchev to harm Mr. Iliev and his family.

Since Mr. and Mrs. Iliev left Bulgaria, the UDF has garnered a 22% representation in the government. However, Mr. Iliev believes that Mr. Donchev and other communists still retain power and would persecute him and his wife if they should return. In support, Mr. Iliev cites letters received from family members warning him that Bulgarian police are still asking after him. He also points to the harassment of his daughter who remained in Bulgaria until 1995.

### B. The Board of Immigration Appeals

Reviewing the record of the proceedings before the Immigration Judge, the Board of Immigration Appeals ("Board") held that Mr. Iliev had been afforded a full and fair hearing before the Immigration Judge, and that, accordingly, there was no due process violation. Reviewing the evidence of record, the Board then held that the Immigration Judge properly had determined that the facts did not establish either past persecution or a well-founded fear of future persecution. Because it found that Mr. and Mrs. Iliev failed to meet the burden of proof required for asylum, the Board concluded that they also could not meet the higher burden for withholding of deportation. Consequently, the Board dismissed the appeal.

## II

## DISCUSSION

### A. Past and Future Persecution

■ We turn first to the contention that the Board's decision that the Ilievs failed to demonstrate past persecution or a well-founded fear of future persecution is not based on substantial evidence.

Mr. and Mrs. Iliev maintain that the Board improperly determined that they were not refugees entitled to asylum. In their view, the Board failed to consider the totality of the circumstances surrounding the Ilievs' lives in Bulgaria, and instead focused on particular events and, viewing each in isolation, determined that each did not establish persecution. With respect to past persecution, Mr. Iliev claims that, as part of a family advocating anticommunist ideals, he was persecuted due to his membership in a "particular social group" and due to his political opinion. To support this contention, Mr. Iliev indicates that he was repeatedly fired from jobs on the basis of his beliefs. He was arrested, interrogated, beaten and jailed due to his democratic convictions and activities and his associations with family members of similar beliefs. Threats to his and his family's safety were made as a result of his political affiliations. An overall assessment of his encounters with government authorities indicates, he claims, that the government had a file on him and monitored his activity. Mr. Iliev was threatened by a member of the Bulgarian secret service, and so he finally

decided to take his wife and leave the country.

Mr. Iliev also argues that the record establishes that he has a well-founded fear of future persecution. He submits that, aside from the anonymous phone threats and the direct threats from Donchev, the secret service agent who allegedly remains in a position of power, other evidence was not considered. The Board focused on the fact that the UDF has achieved some recognition in the government, and therefore concluded that the threat to the Ilievs is gone. However, letters from family members and reports from their daughter indicate that it is not safe to return. Mr. Iliev maintains that the Board failed to consider these aspects of his case in its review; therefore, its decision was not based on substantial evidence.

■ In assessing these contentions, we begin by noting that our review of the decision of the Board of Immigration Appeals is a deferential one. We must determine whether the decision of the Board is supported by substantial evidence. In order to obtain a reversal of the Board's decision, the Ilievs must show the evidence was such that " 'no reasonable fact-finder could fail to find the requisite fear of persecution.' " *Marquez v. INS*, 105 F.3d 374, 378 (7th Cir.1997) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 817, 117 L.Ed.2d 38 (1992)). The Attorney General of the United States has the authority to grant asylum to persons who, in her discretion, meet the statutory definition of "refugee." See 8 U.S.C. § 1158(b)(1). The law, in pertinent part, defines a refugee as "any person.who is outside any country of such person's nationality ... who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Asylum, therefore, can be granted based upon past persecution or upon a well-founded fear of future persecution.

■ Withholding of deportation is governed by a more stringent standard because the Attorney General is required by statute to withhold deportation if it is determined that the petitioner's life or freedom would be threatened on account of one of the five reasons listed above for refugee status. See 8 U.S.C. § 1253(h)(1). The petitioner is required to show that there is a "clear probability" that such persecution will occur upon his return. *INS v. Stevic*, 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984). We have previously noted the distinction in standards, stating that "anyone who fails the laxer asylum test [is barred] from passing the more stringent deportation-withholding test." *Marquez*, 105 F.3d at 382.

Upon examination of the record, we must conclude, given the standard of review, that the decision of the Board of Immigration Appeals is supported by substantial evidence. With respect to past persecution, there is substantial evidence in the record to support the Board's determination that the Ilievs have not suffered past persecution on account of political opinion or membership in a particular social group. The incidents and patterns of behavior cited by the Ilievs were not necessarily on account of Mr. Iliev's politics or his membership in his family. The record supports the conclusion that Mr. Iliev was fired from his job as a truck driver in 1987 because he had let a load spill and was arrested for it. Because the spill was the reason for the arrest, he was not being persecuted for his political beliefs. Similarly, the record will support the conclusion that, although the interrogation and beating following his 1986 arrest constitute reprehensible conduct by the police, Mr. Iliev's uncooperativeness triggered this treatment. Mr. Iliev's subsequent arrest for another traffic violation also was not, on this record, related to his political status.

The record also supports the Board's conclusion that Mr. Iliev's political involvement was not so intense as to support his claim of persecution.[1] The record can be read to support the conclusion that Mr. Iliev did not

---

1. We note that the Immigration Judge determined that Mr. Iliev's "testimony was in parts evasive, and in other instances he altogether re-

fused to answer questions posed by the immigration judge." Mem. Op. at 3.

have any significant political involvement until 1989, when he began supporting UDF activities.[2] Indeed, at no time was Mr. Iliev a member of the UDF; therefore, he cannot be heard to claim that he was persecuted on account of membership in that group.[3] His alternative assertion, made for the first time on appeal, that he was persecuted on account of membership in his family, cannot be the basis of his asylum claim. Our case law has suggested, with some certainty, that a family constitutes a cognizable "particular social group" within the meaning of the law.[4] Nevertheless, even if we could overlook Mr. Iliev's failure to raise this argument in the administrative proceedings, Mr. Iliev must demonstrate that, as a member of that family, he was, or would be, subject to persecution. He failed to demonstrate that his family was a particular target for persecution by Bulgarian authorities; therefore, this claim fails.

We also believe that the record supports the Board's determination that Mr. Iliev has no well-founded fear of future persecution. Mr. Iliev asserts a fear of future persecution at the hands of Ivan Donchev, a Bulgarian secret service agent. Mr. Iliev testified that Donchev harbors a grudge against him and is in a position to hurt him. The record discloses, however, that the nature of this dispute is personal, not political; they disagreed about the employment of a janitor in the building in which they lived. *See Marquez*, 105 F.3d at 380 ("A personal dispute, no matter how nasty, cannot support an alien's claim of asylum."). There is no evidence to suggest Donchev would persecute Mr. Iliev for any political opinion or for membership in a particular social group. Nor does the other evidence submitted by Mr. Iliev compel the conclusion that he is likely to suffer future political persecution in his homeland. Therefore, because the record supports the conclusion that the Ilievs failed to establish past persecution or a well-founded fear of future persecution, the Board correctly affirmed the Immigration Judge's determination that the Ilievs did not qualify for asylum as refugees.

## B. *Full and Fair Hearing*

■ We next examine the Ilievs' contention that the Board abused its discretion in deciding that the Ilievs received a full and fair trial and that there was no due process violation in the proceedings. The Ilievs claim that they were denied a full and fair hearing because they were unable, due to the conduct of the Immigration Judge, to present fully their evidence and to tie together their

---

2. On this record, the Board would have been justified in considering earlier incidents as not sufficiently related to political activity to warrant independent discussion.

3. Our circuit has indicated that to "qualify for asylum based on group membership, an alien must: 1) identify a particular social group; 2) *establish that she is a member of that group;* and, 3) establish that her well-founded fear of persecution is based on her membership in that group." *Sharif v. INS*, 87 F.3d 932, 936 (7th Cir.1996) (emphasis added) (citing test articulated in *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993)); *see also De Valle v. INS*, 901 F.2d 787, 792–93 (9th Cir.1990) (outlining a previously established four-part test for obtaining asylum based on group membership and indicating that one part of the test is that the parties must qualify as members of the group).

4. This court has indirectly treated, for purposes of the well-founded fear analysis, a family as a "particular social group." *See Tzankov v. INS*, 107 F.3d 516, 520 (7th Cir.1997) (finding no well-founded fear of persecution based on family ties because there was no evidence that "petitioner has ever been subjected to persecution due to his familial relation to his father and uncle"); *Najafi v. INS*, 104 F.3d 943, 947 (7th Cir.1997) (finding that Najafi lacked a well-founded fear of persecution because he failed to show that he might be subject to mistreatment because of his "blood tie to political dissidents"); *Sharif v. INS*, 87 F.3d 932, 936 (7th Cir.1996) (finding no well-founded fear of persecution because no evidence that petitioner would be persecuted because of her family); *see also Krastev v. INS*, 101 F.3d 1213, 1217 n. 2 (7th Cir.1996) (declining to address "the issue of whether Krastev's familial affiliation constitutes a social group"). We note that other circuits have found that a family is perhaps the most easily identifiable "particular social group" that could serve as the basis for persecution. *See, e.g., Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir.1986) ("Perhaps a prototypical example of a 'particular social group' would consist of the immediate members of a certain family, the family being a focus of fundamental affiliational concerns and common interests for most people."). Therefore, we treat Mr. Iliev's family as a cognizable "social group" for purposes of our analysis.

case. In their view, the Immigration Judge was predisposed against Mr. Iliev and did not give him the opportunity to present all of the evidence which would indicate the nature of the persecution he has suffered.

Allegations of this sort are most serious and, if well supported by the record, could amount to a denial of the fundamental fairness to which a person appearing before an Immigration Judge is entitled. *See Kuciemba v. INS*, 92 F.3d 496, 501 (7th Cir.1996). Indeed, because even the appearance of partiality is destructive of confidence in the judicial system, we all have the right to expect fair, even-handed treatment by whoever exercises judicial authority of any kind. It is a hallmark of the American system of justice that anyone who appears as a litigant in an American courtroom is treated with dignity and respect. That expectation must be met regardless of the citizenship of the parties or the nature of the litigation. In a country built on the dreams and accomplishments of an immigrant population, a particularly severe wound is inflicted on that principle when an immigration matter is not conducted in accord with the best of our tradition of courtesy and fairness.

Upon study of this record, however, we are convinced that the Board correctly determined that the Ilievs were permitted a full and fair hearing on the merits. The Immigration Judge has broad discretion to control the manner of interrogation in order to ascertain the truth. In this case, the Immigration Judge asked questions to clarify Mr. Iliev's responses, and attempted to obtain more specific information about the extent of Mr. Iliev's political activities.[5] Although the Immigration Judge may have been "brusque," [6] and perhaps could have achieved his objective in a more courteous manner, it is difficult to say on the cold record that his approach warrants criticism; certainly, he did not deny a fair trial. Mr. Iliev cannot claim that the Immigration Judge deprived him of a fair trial based on the lack of opportunity to fully present his case. Moreover, there is no evidence that the Immigra-

tion Judge was predisposed against the Ilievs or was unfamiliar with the relevant facts in the case.

### Conclusion

Accordingly, the decision of the Board of Immigration Appeals is affirmed and the petition for review is denied.

AFFIRMED.

---

5. At the hearing, many of Mr. Iliev's answers were single word responses. At other points, he refused to answer questions.

6. The Board, in its decision, noted that "the Immigration Judge appears to have been brusque at times during the hearing." BIA Dec. at 2.