In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2177

NATALIA KHARKHAN,

*Petitioner,*

*v.*

JOHN D. ASHCROFT,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals
No. A70-488-310

ARGUED JANUARY 17, 2002—DECIDED JULY 16, 2003

Before BAUER, POSNER, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner-Appellant Natalia Kharkhan seeks review of a Board of Immigration Appeals ("BIA") decision affirming the Immigration Court's denial of her applications for special rule cancellation of removal, asylum, and withholding of removal, and its resulting order of voluntary removal. For the reasons set forth herein, we affirm the decision of the BIA.

## BACKGROUND

Kharkhan, a native of the former Union of Soviet Socialist Republics and a citizen of the Republic of Ukraine,

entered the United States with a valid six-month, non-immigrant, visitor-for-pleasure visa in August 1990. Her initial application for asylum, signed in November 1990, was denied following a February 1991 interview with the Immigration and Naturalization Service ("INS").[1] In August 1997, the INS commenced proceedings for Kharkhan's removal from the United States. Kharkan conceded her removability based on her failure to depart under the terms of her visa and submitted written applications for special rule cancellation of removal under 8 U.S.C. § 1229b ("cancellation"), asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231 ("withholding"), and voluntary departure under 8 U.S.C. § 1229c.

At a hearing before an Immigration Judge ("IJ") in September 1998, Kharkhan testified in support of her cancellation application that she has a U.S.-born son (then four years old) by her husband, also a visa overstay from the Ukraine, whom she married one week prior to the hearing. In support of her asylum and withholding applications, she further testified that her removal would subject her to economic hardship as well as the dangers of an uncontrolled Ukrainian criminal element, and that she is a victim of past religious persecution. Her economic hardship, she explained, consisted of (i) favorable economic conditions in the United States relative to those in the Ukraine, (ii) the loss of her employment in the Ukraine subsequent to her arrival here, (iii) employment as a prerequisite to obtaining a residence in the Ukraine, and (iv)

---

[1] We note that, with the passage on November 25, 2002, of the Homeland Security Act, the BIA and other enforcement, investigative, and administrative law components of the now defunct INS were incorporated into the newly created Bureau of Citizenship and Immigration Services under the authority of the Department of Homeland Security; however, the transition is of little practical import to our disposition of the matter.

her fear of an inability to support herself were she to return. With respect to her claim of religious persecution, she testified that she practiced her religion clandestinely in the Ukraine for fear of persecution by the former Soviet regime, which (because it proscribed all religions) did not officially recognize the Ukrainian Catholic Church, of which she is a member. By her own account, however, "[n]obody was discriminated or persecuted. We were just not allowed to go to church, and . . . we didn't go because we were afraid we would be persecuted." Moreover, according to both Kharkhan's testimony and the Ukraine country profile published by the U.S. State Department's Bureau of Eurasian and European Affairs, Catholic churches are now open in the Ukraine and the 1996 Ukrainian constitution guarantees religious freedom to all.[2]

Following the September 1998 hearing, the IJ, having found Kharkhan removable as charged, denied her special rule cancellation, asylum, and withholding applications, and alternatively granted her application for voluntary departure. The IJ's oral and written opinions explained that Kharhkan's cancellation application lacked the requisite showings, under 8 C.F.R. § 1240.58, that removal would subject her and her son to "extreme hardship." In denying her asylum and withholding applications, the IJ cited, inter alia, the following factors: First, her initial asylum application, which was, by her own admission, motivated by her loss of employment in the Ukraine, conceded

---

[2] Relevant provisions of the Ukrainian constitution include the following:

> Every person has the right to freedom of personal philosophy and religion. This right includes the freedom to profess or not to profess any religion, to perform alone or collectively and without constraint religious rites and ceremonial rituals, and to conduct religious activity.

KONST. UKR. ch. II, art. 35. (1996).

that she suffered no mistreatment on account of any protected ground for asylum or withholding of removal. Second, her claim of economic hardship was not a proper ground for asylum or withholding of removal. Third, because the former Soviet regime's restrictions on religious worship were not particularized to her, and because Catholics may now freely worship in the Ukraine, her claim of religious persecution, raised for the first time in her second asylum application, was without merit.

Kharkhan appealed from the IJ's decision and, in April 2002, the BIA affirmed without opinion. She now petitions this Court for review of the decision of the BIA.

## ANALYSIS

Kharkhan challenges the IJ's denials of her applications for cancellation, asylum, and withholding, and further argues that the conduct of the IJ during the September 1998 hearing effected a violation of her right to due process of law. We address each of these claims in turn.

8 U.S.C. § 1229b(b)(1) provides for the cancellation, under limited circumstances, of the removal of deportable aliens at the discretion of the Attorney General. With respect to judicial review of orders of removal, relevant statutory provisions include the following:

> Denials of discretionary relief. Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under [inter alia, 8 U.S.C. § 1229b] or . . . any other decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the Attorney General . . . .

8 U.S.C. § 1252(a)(2)(B)(i) & (ii). Here, the BIA's affirmance of the IJ's decision constitutes a final judgment on the part of the Attorney General regarding the denial to

Kharkhan of relief under § 1229b. *See, e.g.*, *Iddir v. INS*, 301 F.3d 492, 497 (7th Cir. 2002) (noting, in dicta, that denial of applications on the merits under one of the sections enumerated in § 1252(a)(2)(B)(i) (of which § 1229b is one) likely constitutes a "judgment," "decision," or "action" contemplated in § 1252(a)(2)(B)). As such, pursuant to 8 U.S.C. § 1252, this Court lacks jurisdiction to review the denial of Kharkhan's application for special rule cancellation of removal.

With respect to Kharkhan's remaining claims, the proper object of our review is the decision of the IJ, rather than that of the BIA, as the latter issued without opinion. *See* 8 C.F.R. § 1003(a)(7). We review the IJ's denial of Kharkhan's asylum application under the highly deferential substantial evidence standard, *Usinovic v. INS*, 313 F.3d 1025, 1029 (7th Cir. 2002), *see also Gonzalez v. INS*, 77 F.3d 1015, 1021 (7th Cir. 1996), and will affirm the BIA's decision so long as the asylum eligibility finding is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Only where the evidence of an applicant's well-founded fear of future persecution is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution" will we reject the IJ's finding of asylum eligibility. 502 U.S at 481; *see also* 8 U.S.C. § 1252(b)(4)(d).

In order to establish asylum eligibility, an alien must prove that she is a refugee who has suffered "persecution or a well-founded fear of persecution" in her country of origin on account of one of five statutorily protected grounds: (i) race, (ii) religion, (iii) nationality, (iv) membership in a particular social group, or (v) political opinion. 8 U.S.C. § 1101(a)(42)(A). She must also demonstrate that she would be *singled out* for persecution based on one of these grounds. *See, e.g.*, *Milosevic v. INS*, 18 F.3d 366, 373 (7th Cir. 1994); *Tamas-Mercea v. Reno*, 222 F.3d 417, 423

(7th Cir. 2000). Kharkhan has made no such showing. Her concerns that removal to the Ukraine would limit her employment prospects and expose her to the dangers of an uncontrolled criminal element, however justified as reasons for desiring to remain here, do not amount to a well-founded fear of persecution on the basis of any of the protected grounds. Nor, consequently, do they satisfy her burden of proving her asylum eligibility.

Kharkhan also argues that the IJ erred in finding that she failed to establish her status as a victim of past religious persecution. Even assuming, *arguendo*, that she established past persecution, the more significant issue for purposes of our review is whether, considering the changes that have occurred in the post-Soviet Ukraine, she has established a well-founded fear of *future* religious persecution. As this Court stated in *Angoucheva v. INS*, the presumption in favor of granting asylum to an alien who establishes past persecution "may be overcome by evidence suggesting that conditions in the alien's home country have changed to such an extent that she no longer is in danger of persecution there." *Angoucheva*, 106 F.3d 781, 788 (7th Cir. 1997); *see also* 8 C.F.R. §§ 208.13(b)(1)(i)(A) and 208.16(b)(1)(A). The fundamental political changes that occurred in the Ukraine between her arrival in 1991 and the September 1998 hearing leave Kharkhan with no reasonable basis for fear of persecution as a member of the Ukrainian Catholic Church; indeed, she conceded as much during her hearing. As such, to the extent that the IJ's finding that Kharkhan was not a victim of past religious persecution was erroneous, so too was it harmless. Moreover, his determination that Kharkhan showed no requisite fear of persecution was entirely reasonable based upon the evidence presented, and the denial of her asylum application was thus proper.

The denial of Kharkhan's asylum application also precludes the granting of her withholding of removal ap-

plication, as asylum eligibility exacts a less rigorous burden of proof than eligibility for withholding. To prove withholding of removal eligibility, an alien must demonstrate that she is *more likely than not* to suffer persecution on account of one of the five statutorily protected grounds; whereas, to prove asylum eligibility, she need only prove her *well-founded fear* of such persecution. *Ahmad v. INS*, 163 F.3d 457, 463 (7th Cir. 1999). "Since we find that [Kharkhan] did not satisfy [her] burden of proving a well-founded fear of persecution, it necessarily follows that [s]he has also failed to satisfy [her] burden for the more stringent clear probability of persecution standard to qualify for withholding of deportation." *See id.*

Finally, Kharkhan claims that the IJ's conduct during the September 1998 hearing deprived her of due process of law, because (i) his inquiries into her personal life and moral character demonstrated his bias against her and (ii) the immediate issuance of his oral opinion at the hearing's conclusion suggests that he failed to consider all of the evidence presented. Kharkhan cites a lengthy passage from this Court's opinion in *Iliev v. INS*, for the valid proposition that immigration proceedings ought to be "conducted in accord with the best of our tradition of courtesy and fairness." *Iliev*, 127 F.3d 638, 643 (7th Cir. 1997). However, like the petitioner in *Iliev*, Kharkhan has failed to allege any discourteous or unfair conduct on the part of the IJ that amounts to a due process violation. *See id.* "The Immigration Judge has broad discretion to control the manner of interrogation in order to ascertain the truth," *see id.*, and, insofar as his questions sought to clarify Kharkhan's immigration status and eligibility for cancellation, asylum, withholding, and voluntary departure, they were permissible, *see Flores-Leon v. INS*, 272 F.3d 433, 440 (7th Cir. 2001). Not only does Kharkhan fail to establish bias against her on the part of the IJ, but she is also unable to demonstrate, as

she must in order to prevail on her due process claim, that his conduct prejudiced her. *See, e.g.*, *Roman v. INS*, 233 F.3d 1027, 1033 (7th Cir. 2000). Because she suggests no manner, nor do we discern any, in which the IJ's questions or his issuance of a decision at the conclusion of a full and fair hearing affected the final disposition of her applications, her due process claim fails.

The decision of the Board of Immigration Appeals is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*