Mark S. Davidson, Davidson & Schiller, Chicago, IL, for Petitioners.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Jamie M. Dowd, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

**Omar ESQUIVEL, et al., Petitioners,**

v.

**John D. ASHCROFT, Respondent.**

**No. 03–3216.**

United States Court of Appeals, Seventh Circuit.

Argued June 16, 2004.

Decided July 9, 2004.

Amended July 13, 2004.

Before COFFEY, RIPPLE, and WILLIAMS, Circuit Judges.

**ORDER**

Omar Esquivel and his family applied for asylum, alleging that a gang in their native Columbia threatened Mr. Esquivel after he testified against gang members at their trial for the murder of Mr. Esquivel's brother. An immigration judge (IJ) denied the family's application and the Board of Immigration Appeals (BIA) affirmed without opinion. We deny the Esquivels' petition for review because the IJ's decision is supported by substantial evidence.

**I.**

Mr. Esquivel and his brother owned a leather goods company in Bogota, Columbia. One night in 1995, Mr. Esquivel's brother disappeared while trying to collect

money owed to the company. While searching for his brother, Mr. Esquivel learned from a witness that, on the night in question, his brother had been pushed into the house of the leader of "Los Canecos," a large-scale criminal gang. Mr. Esquivel described Los Canecos as a paramilitary group that commits crime and is not associated with the Columbian government. Several days after his brother went missing, the Columbian police found his brother's dismembered body. With the assistance of a private attorney hired by Mr. Esquivel, the police investigated the murder, collected evidence, arrested four or five suspects, and eventually prosecuted and convicted three of the gang members for this crime. After Mr. Esquivel and his other brothers testified at the trial of the gang members, Los Canecos members subjected the brothers to death threats via telephone and in person at the courthouse.

Following these death threats, the Esquivel family came to the United States in 1997. After overstaying their visitor visas, the INS instituted removal proceedings against the family. The family then applied for both asylum and withholding of removal. We focus solely on their asylum claim, however, because a successful application for withholding of removal requires an even stronger showing by an applicant. *Ahmed v. Ashcroft,* 348 F.3d 611, 615 (7th Cir.2003).

The IJ found the Esquivels to be removable as charged and denied their application for asylum and withholding of removal. The IJ found Mr. Esquivel's allegations to be credible, but concluded that the Esquivels did not qualify for asylum because they had not demonstrated the requisite nexus between the Columbian government and the alleged persecution. Rather, the IJ found that the persecutors were common criminals unconnected to the Columbian government.

The IJ ended the removal hearing after Mr. Esquivel had submitted documentary evidence and had testified under direct examination (thus cutting out cross-examination and closing statements) because the Esquivels had not been able to establish this nexus with their case-in-chief. The BIA affirmed and adopted the IJ's decision.

## II.

Asylum may be granted to an alien who is unable or unwilling to return to his home country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). We uphold a denial of asylum if the decision is supported by substantial evidence. *Ahmed,* 348 F.3d at 615. Our review is deferential and, to reverse, we must conclude that the evidence compels a conclusion contrary to that which the agency reached. *Elias–Zacarias,* 502 U.S. at 481 n. 1. Because the BIA affirmed and adopted the IJ's decision, we review the IJ's reasoning. *Oforji v. Ashcroft,* 354 F.3d 609, 612 (7th Cir. 2003). As the IJ noted, Mr. Esquivel's wife and three children are derivative applicants for asylum, and their application rests on the outcome of Mr. Esquivel's claim that Los Canecos made death threats against him. *See generally Miljkovic v. Ashcroft,* 366 F.3d 580, 581 (7th Cir.2004).

The Esquivels' first argument is that this court should remand their case to the agency for further adjudication because the IJ failed to address Mr. Esquivel's claim that he was persecuted on account of his social group, styled as Columbians who wish to bring criminals to justice. If an IJ fails to address an essential component of

an applicant's claim, remand may be appropriate. *See, e.g., Mousa v. INS,* 223 F.3d 425, 429 (7th Cir.2000). But in this case, the IJ concluded that the Esquivels had not demonstrated a nexus between their government and the alleged persecution. Because applicants have the burden of making this showing before being granted asylum. *see Roman v. INS,* 233 F.3d 1027, 1034–35 (7th Cir.2000); *Nenadovic v. INS,* 108 F.3d 124, 129 (7th Cir.1997), the Esquivels failure to demonstrate this nexus doomed their application. Therefore, it was not necessary for the IJ to address all aspects of their case (including Mr. Esquivel's claim that he was targeted as a member of a particular social group), and a remand to address this issue would be futile. *See INS v. Bagamasbad,* 429 U.S. 24, 25, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Mousa,* 223 F.3d at 429.

Next, the Esquivels challenge the IJ's conclusion that they did not establish this required nexus between the government and the alleged persecution. This nexus can be established by showing that the government actually committed or incited the persecution, that it acquiesced to or implicitly condoned persecution by private actors, or that it was unwilling or unable to protect the victims from persecution by private actors. *See Roman,* 233 F.3d at 1034; *Galina v. INS,* 213 F.3d 955, 958 (7th Cir.2000). The Esquivels contend that the IJ applied the wrong legal standard (by requiring them to show that the persecutors were actually associated with the government) and that the IJ's reasoning on this point was nonsensical. A fair reading of the IJ's decision, however, reveals that the IJ applied the correct legal standard by analyzing whether the Columbian government had been unwilling or

unable to protect the Esquivels from the criminal activity of Los Canecos. *See* R. at 131–32 ("[I]t is the assessment of this Court that the government of Columbia has attempted to assist the respondent in the prosecution of these criminals the way that they would be in the United States.").

Moreover, substantial evidence supports the IJ's conclusion that the Esquivels failed to establish that the Columbian government was unwilling or unable to protect them. In support of his conclusion, the IJ cites that the Columbian government has arrested and prosecuted members of Los Canecos for their criminal activity. In contrast, the Esquivels do not point to any evidence in the record that tends to establish that the Columbian government is unwilling or unable to protect them from Los Canecos. Although we recognize that the Columbian government prosecuted Los Canecos members for the murder of Mr. Esquivel's brother rather than for their death threats directed against Mr. Esquivel, the Columbian government's actions in response to the murder of Mr. Esquivel's brother belie the notion that the Columbian government turned a blind eye to the activity of Los Canecos. *Cf. Singh v. INS,* 134 F.3d 962, 968 (9th Cir.1998) (finding that government response precluded asylum relief even where police responded to petitioner's calls but took no further action). Sadly, the criminal threat that the Esquivels fear should they return to Columbia is simply not the type of threat for which asylum protection is ordinarily extended. *See Kharkhan v. Ashcroft,* 336 F.3d 601, 605 (7th Cir.2003) ("[Petitioner's] concerns that removal ... [would] expose her to the dangers of an uncontrolled criminal element, however justified as reasons for desiring to remain here, do not amount to a well-founded fear of persecution on the basis of any of the protected grounds."); *Vatulev v. Ashcroft,* 354 F.3d

1207, 1209 (10th Cir.2003) (denying petition where alien did not distinguish alleged persecution from acts of "common criminality"). Although the IJ's treatment of this issue in his decision is relatively terse, the evidence that the Esquivels presented does not compel the conclusion that the Columbian government was complicit or indifferent to the criminal activity of Los Canecos. *See Mousa,* 223 F.3d at 430 (denying petition for review where IJ's reasoning, although minimal, was rational and supported by record).

Finally, the Esquivels make the procedural argument in their brief that the IJ violated their due process rights by ending the removal hearing following Mr. Esquivel's testimony under direct examination. We review a due process challenge *de novo,* as the question whether an immigration hearing violates due process is purely a legal issue. *Kerciku v. INS,* 314 F.3d 913, 917 (7th Cir.2003). So long as applicants have the opportunity to present their most favorable evidence, an IJ does not violate due process by focusing the proceedings and limiting the extent of some testimony. *See id.* at 917–18. In this case, although the IJ asked the government to waive cross-examination and excluded the giving of closing statements, the Esquivels do not contest that they were able to fully present their case-in-chief, including the direct testimony of Mr. Esquivel and the submission of documentary evidence. Because the Esquivels had the opportunity to make their case, the IJ did not violate their due process rights by cutting short the hearing once he had concluded that they had not demonstrated their eligibility for asylum with their case-in-chief.

Because the evidence does not compel the conclusion that the Esquivels are entitled to immigration relief, their petition for review is DENIED.