# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-4065

CRISANTO LEYVA,

*Petitioner,*

*v.*

JOHN D. ASHCROFT, United States Attorney General,

*Respondent.*

_____

Appeal from the Board of Immigration Appeals
Executive Office for Immigration Review
United States Department of Justice.
No. A 77 769 193

_____

ARGUED JUNE 11, 2004—DECIDED AUGUST 13, 2004

_____

Before FLAUM, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* Crisanto Leyva, an illegal alien, appeals from the Attorney General's final judgment to deny his application for cancellation of removal. Because we lack jurisdiction over this appeal, we dismiss.

I.

By his own admission, Leyva is an illegal alien who crossed the border between the United States and Mexico in

1990. After settling in Illinois, Leyva found work as the operator of a paper cutter, and he and his wife (who is also an illegal alien) bought their own home. His wife also gave birth to two children in the United States, Richard and Cynthia, who thereby became U.S. citizens. Other than his status as an illegal alien, Leyva was living the American dream.

That dream came to an end in 1999, when Leyva applied to the Immigration and Naturalization Service ("INS")[1] for permanent residence. In so doing, Leyva acted under the mistaken belief that he could obtain an employment authorization card and make legitimate his immigration status. In reality, because Leyva had no basis to qualify for permanent residence, he had essentially reported himself to the INS.

At his removal proceeding in September 2001, Leyva conceded that he was in the United States without inspection or admission and thus removable. Leyva argued, however, that he was eligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1), which requires the alien to show, among other things, that his removal would result in "exceptional and extremely unusual hardship" to a spouse, parent, or child who is either a lawful permanent resident or a U.S. citizen. Leyva maintained that Richard and Cynthia would suffer such hardship because it would be difficult for him to support his family in his hometown in Mexico, and because Richard and Cynthia would lack adequate educational opportunities and a decent standard of living in Mexico.

The immigration judge disagreed, concluding that Leyva had not shown that Richard and Cynthia would face "ex-

---

[1] On March 1, 2003, the INS ceased to exist as an independent agency and the Department of Homeland Security assumed its functions.

ceptional and extremely unusual hardship" in Mexico. He reasoned that the difficulties that Richard and Cynthia would face "are not materially different from those hardships encountered by other similarly situated youngsters who have grown up in the United States and faced the prospect of relocating to a country abroad with their alien parents." The immigration judge therefore ordered removal, and the Board of Immigration Appeals ("BIA") affirmed without opinion. Leyva appeals, arguing that the Fifth Amendment requires that, in assessing hardship under § 1229b(b)(1), Richard and Cynthia be compared to all citizen children instead of being compared only to the children of aliens.

II.

Whether to cancel an alien's removal, pursuant to § 1229b(b)(1), is a matter committed to the Attorney General's discretion. *Kharkhan v. Ashcroft*, 336 F.3d 601, 604 (7th Cir. 2003). To qualify for cancellation of removal under § 1229b(b)(1), an alien must (1) be continuously present for ten years prior to being served with a notice to appear; (2) display good moral character; (3) not have been convicted of specified offenses; and (4) demonstrate that removal would "result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1) (2000). Although the immigration judge concluded that Leyva met the first three criteria, he decided that Leyva did not meet the hardship requirement. The immigration judge therefore denied relief, and the BIA then affirmed that decision, which constitutes the Attorney General's final judgment to deny relief under § 1229b. *Kharkhan*, 336 F.3d at 604.

Leyva now contends that the Attorney General's judgment should be vacated, arguing that the Attorney General

violated the Fifth Amendment's guarantee of due process by comparing Richard and Cynthia to "other similarly situated youngsters who have grown up in the United States and faced the prospect of relocating to a country abroad with their alien parents," instead of comparing them to all citizen children. In effect, Leyva is demanding that the standard of comparison include all citizen children, including those whose parents are U.S. citizens, in the hypothetical event that they were ordered to relocate to another country—presumably Mexico. It is not clear how this greatly expanded standard would affect the prospects of Leyva showing that his children would suffer exceptional and extremely unusual hardship, but it is evident that it would include many times the number of children to whom the statute refers (i.e., children of deportable aliens). Leyva asks us to vacate the order of removal and remand this case for another determination (this time, one that complies with his definition of due process) of whether he is eligible for cancellation of removal.

The government argues that we lack jurisdiction to decide this case. In support of this assertion, the government points to 8 U.S.C. § 1252(a)(2)(B)(i), which states that, "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under" § 1229b. Although § 1252(a)(2)(B)(i) seems unequivocally to deprive us of jurisdiction over Leyva's appeal, he notes that his claim is constitutional and invokes the principle that there must be a safety valve for constitutional claims; that is, he argues that interpretation of § 1252(a)(2)(B)(i), like interpretation of any other statute, must be informed by the presumption against precluding jurisdiction over constitutional arguments. *Singh v. Reno*, 182 F.3d 504, 509 (7th Cir. 1999). So it must.

Our precedent, however, leads to the conclusion that § 1252(a)(2)(B)(i) overcomes this presumption and places

claims like Leyva's beyond the limits of our jurisdiction. *See Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004) (concluding that, even if the petitioner had asserted properly a denial of due process under the Fifth Amendment, § 1252(a)(2)(B)(i) would have precluded the court's jurisdiction, but allowing jurisdiction over constitutional claims which may present "bizarre miscarriages of justice."); *Kharkhan*, 336 F.3d at 604 (concluding that § 1252(a)(2)(B)(i) precluded jurisdiction over the petitioner's constitutional claim); *see also Bosede v. Ashcroft*, 309 F.3d 441, 446 (7th Cir. 2002) (concluding that a jurisdiction-limiting provision precluded our consideration of the petitioner's "claim that his Fifth Amendment due process rights were violated"); *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003) (concluding that § 1252(a)(2)(B)(ii) precluded jurisdiction over the petitioner's challenge, outside the context of a habeas proceeding, to the revocation of his advance parole).

Leyva argues that *LaGuerre v. Reno*, 164 F.3d 1035, 1040 (7th Cir. 1998) and *Singh* stand for the contrary position that "direct review in the courts of appeals remains an option for aliens wishing to challenge their deportation on constitutional grounds." In both of those cases, we stated that this court could review directly the constitutional claims of aliens who, before the 1996 amendments to the Immigration and Nationality Act, could have filed habeas petitions in the district court. *See Singh*, 182 F.3d at 501-11; *LaGuerre*, 164 F.3d at 1040. *LaGuerre* and *Singh* are distinguishable because in neither case did we confront the jurisdictional bar relevant here: § 1252(a)(2)(B)(i). Instead, *LaGuerre* concerned § 440(a) of the Antiterrorism and Effective Death Penalty Act of 1996, codified as 8 U.S.C. § 1252(a)(2)(C), s*ee LaGuerre*, at 1040, and *Singh* dealt with both § 1252(a)(2)(C) and 8 U.S.C. § 1252(g), s*ee Singh*, 182 F.3d at 508. Therefore, unlike *Kharkhan* and *Dave*, neither *LaGuerre* nor *Singh* is directly on point.

We further note that in *LaGuerre* the government agreed that the relevant jurisdictional bar (there, § 440(a)) allowed for direct review of the petitioners' constitutional claims, *LaGuerre*, 164 F.3d at 1040, so the court never had the benefit of adversary briefing as to that issue. Here, by contrast, the government explicitly argues that the jurisdictional bar (in this case, § 1252(a)(2)(B)(i)) precludes our review of this case.

As to *Singh*, we also observe that this court recognized that the "safety valve" of constitutional review discussed in that case was an "exceptional procedure" justified by the petitioner's "Homeric odyssey through the administrative and judicial process" in that "highly unusual case." *Singh*, 182 F.3d at 510-11. By its own terms, our opinion in *Singh* applies only to a highly unusual case—and we see nothing unusual here. *Singh*, therefore, would be of little aid to us even if *Kharkhan* and *Dave* were not the most applicable precedents.

We turn finally to Leyva's contention that, notwithstanding § 1252(a)(2)(B)(i), this court has jurisdiction under 8 U.S.C. § 1252(b)(9), a provision titled "[c]onsolidation of questions for judicial review." Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). We disagree with Leyva because § 1252(b)(9) is a "jurisdictional *limitation*," *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483 (1999) (emphasis added), not a *grant* of jurisdiction. Its purpose is to "consolidate certain questions in one petition for review from the final order," *Flores-Miramontes v. INS*, 212 F.3d 1133, 1140

(9th Cir. 2000), and not to render § 1252(a)(2)(B)(i) a nullity, *see Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (discussing the interplay between § 1252(a)(2)(B)(i) and § 1252(b)(9)). Accordingly, § 1252(b)(9) does not provide an independent basis for jurisdiction that somehow overcomes the clear dictate of § 1252(a)(2)(B)(i).

### III.

The meaning of 8 U.S.C. § 1252(a)(2)(B)(i) is clear: we may not review the Attorney General's judgment regarding whether or not to grant cancellation of removal under 8 U.S.C. § 1229b(b)(1), even where that judgment is challenged on the ground that it violates due process. Congress, in passing § 1252(a)(2)(B)(i), has clearly and convincingly placed Leyva's due process challenge to the denial of his application for cancellation of removal outside of our jurisdictional limits. This appeal is therefore DISMISSED for want of jurisdiction.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*