In the

# United States Court of Appeals
### For the Seventh Circuit

———————

Nos. 04-1448 & 04-3471

JOSE MARTINEZ-MALDONADO,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,
United States Attorney General,

*Respondent.*

———————

On Petitions for Review of Orders of
The Board of Immigration Appeals.
No. A76-774-223

———————

ARGUED JANUARY 4, 2006—DECIDED FEBRUARY 10, 2006

———————

Before CUDAHY, RIPPLE, and KANNE, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Jose Martinez-Maldonado, a
native and citizen of Mexico, appeals from the Board of
Immigration Appeals' (BIA) denial of his appeal from the
Immigration Judge's (IJ) denial of removal as well as the
denial of his subsequent motion to reopen and reconsider.
Because we lack jurisdiction of this appeal, we dismiss.

## I. Background

Jose Martinez-Maldonado entered the United States in
1996 as a non-immigrant visitor from Mexico and was
authorized to remain in the United States for six months.

However, he did not return to Mexico as required. During his time in the United States, Martinez-Maldonado and his wife, Maria B. Hernandez (a non-U.S. citizen), built a comfortable life. Martinez-Maldonado obtained a job at Breanne Inc. in Palatine, Illinois, where he earned $940 per week. He and his wife resided in Palatine, Illinois, with his father and three children. Two of the minor children, Pablo (DOB 7/11/98) and Paula (DOB 8/29/00), are United States citizens, since they were born in the United States.

In 1998 Martinez-Maldonado filed an application for permanent resident status with the Immigration and Naturalization Service (INS).[Œ] However, when his application was reviewed by the INS, it was determined that he was not eligible for permanent resident status and that he had been in the United States unlawfully. Consequently, he was served with a notice of removal proceedings under section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B), as a non-immigrant alien who had remained longer than permitted. Martinez-Maldonado initially sought cancellation of removal based upon "exceptional and extremely unusual hardship" to his citizen minor children.

An evidentiary hearing was held at which Martinez-Maldonado testified. He presented information about his children, his job and his family. His wife resides in the United States without permission. His children are in good health and speak Spanish. His oldest daughter, Maria Jose, is nine years old and arrived in the United States in 1997 with Martinez-Maldonado's wife. His middle child, Pablo, is four years old and does not yet attend school. His

---

[Œ] On March 1, 2002, the INS ceased to exist as an independent agency and the Department of Homeland Security assumed its functions.

youngest child, Paula Beatriz, is two years old and does not yet attend school. His only relative (besides his children and wife) living in the United States is his 71-year-old father who resides in the United States without permission. His mother, sister, brother and cousins reside in Mexico. He also owns a three-bedroom house in Mexico. In the United States, Martinez-Maldonado owns a time-share in Florida and two automobiles.

After the completion of the evidentiary hearing, the IJ on September 27, 2002, denied Martinez-Maldonado's application for cancellation because he failed to establish that his children would suffer exceptional or extremely unusual hardship if they were removed to Mexico. The judge did, however, allow Martinez-Maldonado to voluntarily depart the United States. Martinez-Maldonado appealed the judge's decision to the BIA on October 28, 2002. On January 26, 2003, the BIA affirmed the judge's decision without opinion.

On February 25, 2004, Martinez-Maldonado filed a motion with the BIA to reopen and reconsider. He argued that the BIA improperly affirmed without separate opinion because the IJ was incorrect factually and legally in finding that Martinez-Maldonado could find gainful employment in Mexico. He argued that the immigration judge should have taken judicial notice of the extreme unemployment and depressed economy in Mexico. Martinez-Maldonado also argued that his deportation would lead to the "de-facto deportation of his daughters." Further, he believed that he was able to show that his deportation would lead to irreparable hardship for his children, and he referred the BIA to two exhibits attached to his motion. This was additional evidence not presented before the immigration judge. The evidence was in the form of an assessment by a clinical psychologist stating that deportation of the petitioner "would have a significant financial, emotional, and enduring psychological negative effect" on

Martinez-Maldonado's children. Martinez-Maldonado also sought our review of the BIA's underlying decision on the same day.

On August 26, 2004, the BIA denied petitioner's motion to reopen and reconsider. The BIA found that petitioner failed to demonstrate any error of fact or law in its prior decision. It rejected petitioner's argument that the BIA's decision to affirm without separate opinion was barred by the regulations (citing 8 C.F.R. § 1003.2(b)(3)).

Additionally, the Board denied Martinez-Maldonado's motion to reopen based on new evidence. The Board found that Martinez-Maldonado's evidence of psychological reports discussing petitioner's role in and relationship with his family did not include a curriculum vitae or evidence of professional credentials of the reporting psychologist. The BIA further found that Martinez-Maldonado failed to establish that these reports, or similar reports, were unavailable and could not have been discovered or presented during proceedings before the IJ, as required by 8 C.F.R. § 1003.2(c)(1). Finally, the BIA found that the reports did not describe any additional hardships that would be encountered by Martinez-Maldonado's United States citizen children beyond those considered in the decision of the IJ and by the initial BIA decision. On September 23, 2004, Martinez-Maldonado sought review by this court of the rejection of the motion to reopen and the underlying BIA decision.

## II. Discussion

We are only able to decide this case on the merits if we have jurisdiction over this appeal. The government argues that we lack jurisdiction to review the BIA's initial denial of Martinez-Maldonado's appeal from the IJ's decision denying cancellation of removal as well as the BIA's decision to deny his motion to reopen and reconsider.

The decision whether to cancel an alien's removal pursuant to § 1229b(b)(1) is left to the Attorney General's discretion. *Leyva v. Ashcroft*, 380 F.3d 303, 305 (7th Cir. 2004); *Kharkhan v. Ashcroft*, 336 F.3d 601, 604 (7th Cir. 2003). Section 1229b(b)(1) requires that in order for an alien to receive cancellation of removal, he must: (1) be continuously present for ten years prior to being served with a notice to appear; (2) display good moral character; (3) not have been convicted of specified offenses; and (4) demonstrate that removal would "result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C § 1229b(b)(1) (2000).

The IJ found that Martinez-Maldonado met the first three requirements, but that he was not able to show that his United States citizen children would suffer exceptional or extremely unusual hardship as a result of his removal. The BIA affirmed this decision without opinion, thus providing the Attorney General's final judgment denying relief under § 1229b. *Kharkhan*, 336 F.3d at 604. The BIA subsequently denied Martinez-Maldonado's motion to reopen and reconsider. After considering the government's argument, we agree that we are not able to reach the merits here because we lack jurisdiction over this appeal. The statute that limits our jurisdiction, 8 U.S.C. § 1252(a)(2)(B)(I), provides "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b [cancellation of removal] of this title." This provision, together with its companion provision, 8 U.S.C. § 1252(a)(2)(B)(ii), bars judicial review of all discretionary decisions of the Attorney General made in immigration cases, with a few exceptions, such as asylum cases.

Our Court and others have confirmed that the application of this statute strips us of jurisdiction in discretionary cancellation of removal cases. *See, e.g.*, *Leyva v. Ashcroft*,

380 F.3d 303, 305 (7th Cir. 2004) ("The meaning of 8 U.S.C. § 1252(a)(2)(B)(I) is clear: we may not review the Attorney General's judgment regarding whether or not to grant cancellation of removal under 8 U.S.C. § 1229b(b)(1)"); *Kharkhan v. Ashcroft*, 336 F.3d 601, 604 (7th Cir. 2003); *Pilch v. Ashcroft*, 353 F.3d 585, 587 (7th Cir. 2003) ("The thing under review is the agency's final decision, not the language of its opinion; and if the final decision is to withhold certain discretionary remedies, that's the end . . . . we lack jurisdiction whether or not the agency made a factual or legal error on the way to decision."). *See also Romero-Torres v. Ashcroft*, 327 F.3d 887, 892 (9th Cir. 2003) (Court "lack[s] jurisdiction to review the BIA's discretionary determination that an alien failed to satisfy the 'exceptional and extremely unusual hardship' requirement for cancellation of removal"); *Gonzalez-Oropeza et al. v. Ashcroft*, 321 F.3d 1331, 1332-33 (11th Cir. 2003) ("the exceptional and extremely unusual hardship determination is a discretionary decision not subject to review").

Martinez-Maldonado attempts to get around this jurisdictional limitation by arguing that his case can be distinguished in three key ways from those cited above. First, he argues that even if this court does not have jurisdiction over the initial BIA decision, it does have jurisdiction over the BIA's decision to deny Martinez-Maldonado's motion to reopen and reconsider. He cites *Singh v. Gonzales*, 404 F.3d 1024 (2005) in support of this contention. However, he fails to discuss a significant factor distinguishing his case from *Singh*. In *Singh*, we did not find that we lacked jurisdiction over the underlying order; here, we do. We have earlier held that we lack jurisdiction over motions to reopen and reconsider in cases where we lack jurisdiction to review the underlying order. *See Dave v. Ashcroft*, 363 F.3d 649, 652 (7th Cir. 2004); *Nwaokolo v. INS*, 314 F.3d 303, 306 (7th Cir. 2002) (per curiam) ("Ms. Nwaokolo's motion to reopen is part and parcel of her deportation proceedings"); *Chow v.*

*INS*, 113 F.3d 659, 664 (7th Cir. 1997) (an order of deportation includes "orders denying motions to reconsider and reopen"), *abrogated on other grounds by LaGuerre v. Reno*, 164 F.3d 1035, (7th Cir. 1998).

Other Circuits have come to the same conclusion. *See, e.g.*, *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004) ("Only where judicial review of the underlying order is precluded is denial of a subsequent motion to reopen also precluded."); *Patel v. United States Att'y Gen.*, 334 F.3d 1259, 1261 (11th Cir. 2003) (holding that when jurisdiction over final order is precluded, court lacked jurisdiction to review orders denying motions to reopen such final orders); *Rodriguez v. Ashcroft*, 253 F.3d 797, 800 (5th Cir. 2001) ("It is axiomatic that if we are divested of jurisdiction to review an original determination of the Board that an alien has failed to establish that he would suffer extreme hardship if deported, we must also be divested of jurisdiction to review the Board's denial of a motion to reopen on the ground that the alien has still failed to establish such a hardship."); *Sarmadi v. INS*, 121 F.3d 1319, 1322 (9th Cir. 1997) ("where Congress explicitly withdraws our jurisdiction to review a final order of deportation, our authority to review motions to reconsider or to reopen deportation proceedings is thereby likewise withdrawn"). Since we do not have jurisdiction to hear the underlying discretionary hardship issue in Martinez-Maldonado's case, we also do not have jurisdiction to hear his appeal of the BIA's decision to deny his motion to reopen and reconsider.

Martinez-Maldonado further argues that this court has jurisdiction to consider his challenge to the BIA's procedure in affirming without opinion (AWO) the decision of the IJ. Martinez-Maldonado argues that because he is challenging not the merits of the BIA decision, but instead the BIA's decision to follow the AWO process, we have jurisdiction. However, when the BIA decides whether or not to stream-

line a case using the AWO process, the members of the BIA analyze the IJ's decision to determine if the decision is correct, if the factual situation is novel or if any errors were harmless. *See* 8 C.F.R. § 1003.1(e)(4). We would have to invoke a similar analysis of the IJ's decision in order to determine if the streamlining factors were appropriately applied, but we lack jurisdiction to engage in a merits analysis of the IJ's decision. Thus, because we lack jurisdiction to review the IJ's decision on the merits of the hardship claim, we necessarily lack jurisdiction to review the Board's decision to affirm without opinion. *See Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004) ("[Dave's] claim that the BIA violated due process by streamlining his appeal would face a separate jurisdictional bar, one that prevents us from reviewing the merits of an IJ's discretionary decision to deny an application for cancellation of removal."). *See also Falcon Carriche et al. v. Ashcroft*, 335 F.3d 1009, 1017-18 (9th Cir. 2003) ("To assess whether streamlining was appropriate, we would necessarily be engaged in a merits analysis of the hardship claim. Because we lack jurisdiction to review the merits of the IJ's discretionary decision regarding the 'exceptional and extremely unusual hardship' requirement—the only aspect of the cancellation of removal decision at issue in [this case]—we are also without jurisdiction to evaluate whether streamlining was appropriate.").

Finally, Martinez-Maldonado argued, in his briefs, that this Court has jurisdiction to remand his case for a new and complete review of his application based on the class action settlement in *Ramos et al. v. Ridge, et al*, Case No. 02 C 8266. This settlement agreement arose from claims that the Chicago District Office of the INS did not follow the law and its own regulations when it used information obtained by aliens petitioning for permanent residence and adjustment of status to place these applicants into removal proceedings. This agreement allows class members to apply to the United States Immigration and Customs Enforcement (ICE)

to exercise discretionary review to dismiss removal proceedings against the class members. Martinez-Maldonado argued that the settlement agreement should constitute the last agency action and, since it changed the position of the agency regarding his application, we should find that it controls, and remand the case for review. However, we cannot even get to the question of whether the settlement agreement would have constituted the latest agency action because before oral argument the ICE informed Martinez-Maldonado that it had decided to decline invoking its prosecutorial discretion in his case to dismiss the removal proceedings against him. At oral argument, Martinez-Maldonado conceded that he could no longer argue that the settlement agreement changed the position of the agency favorably to him in such a way that this court should remand his case based on the agreement. The prosecutorial discretion exercised by the ICE is not at issue in this appeal and is not reviewable by us, according to the settlement agreement.

Martinez-Maldonado fails to distinguish his case from well-established case law supporting the conclusion that we do not have jurisdiction to review this appeal.

Petition for review dismissed for lack of jurisdiction.

A true Copy:

　　　　Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*